# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1096

_____

| | |
|---|---|
| Donna L. Gowell, | * |
| | * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Arkansas. |
| Kenneth S. Apfel, Commissioner, | * |
| Social Security Administration, | * |
| | * |
| Appellee. | * |

_____

Submitted:  December 15, 2000

Filed:  March 9, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, and HANSEN,
    Circuit Judges.

_____

WOLLMAN, Chief Judge.

Donna L. Gowell appeals from the district court's[1] judgment affirming the denial
of her application for disability insurance benefits pursuant to Title II of the Social
Security Act, 42 U.S.C. §§ 416(i) & 423.  We affirm.

---

[1]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the
Eastern District of Arkansas, who presided over the case with the consent of the
parties.

# I.

Gowell was born on March 12, 1950, and has a high school education. Her past relevant work includes that of a nurse's aid, a stock clerk, a cashier, and a semi-trailer truck driver. In August of 1991, Gowell suffered injury to her neck, left arm, and left shoulder during a motor vehicle accident that occurred when she was sleeping in the semi-trailer truck driven by her husband.

During the years following the accident, Gowell received medical care from a number of doctors, specialists, and clinics for chronic pain and swelling, numbness, and other ailments in her neck, back, arm, and shoulder. On April 4, 1996, orthopedic surgeon Dr. Claude Martimbeau, one of Gowell's treating physicians, permanently restricted Gowell from repetitive bending and from lifting more than fifteen pounds. Most of the doctors that Gowell consulted for her chronic pain condition concluded that it is a somatoform disorder.[2] Her doctors have primarily ordered conservative treatment, such as physical therapy, pain management, and psychological treatment. Gowell was also repeatedly diagnosed with substance abuse and depression.

Gowell applied for disability benefits on October 23, 1995, alleging an onset disability date of August 31, 1991. Gowell asserts that she is unable to work because of her shoulder and neck injury and chronic pain. She also listed depression as an impairment on her requests for reconsideration. The Social Security Administration denied Gowell's application initially and again on reconsideration. Gowell then requested and received a hearing before an administrative law judge (ALJ), who

---

[2]"Somatoform" denotes "psychogenic symptoms resembling those of physical disease." The Sloane-Dorland Annotated Medical-Legal Dictionary 479 (Supp. 1992); see Roe v. Chater, 92 F.3d 672, 676 n.5 (8th Cir. 1996) ("Somatoform disorder is a condition characterized by physical symptoms that suggest a general medical condition and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder.").

evaluated Gowell's claim according to the five-step sequential analysis prescribed by the social security regulations. 20 C.F.R. §§ 404.1520 (a)-(f); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing analysis). At the first three steps of the analysis, the ALJ found that Gowell had not engaged in substantial gainful activity since the disability onset date, that she suffered from myofascial[3] pain involving her left upper extremity and neck and prescription medication abuse, and that she had severe impairments that did not meet or equal a listed impairment. At the fourth step, the ALJ determined that Gowell could return to her past relevant work as a cashier and stock clerk and thus was not disabled within the meaning of the Social Security Act.

Gowell appealed to the Appeals Council, which denied her request for review. Accordingly, the ALJ's judgment became the final decision of the Commissioner of the Social Security Administration. Gowell then sought review in the district court, which granted summary judgment in favor of the Commissioner and dismissed her complaint. Gowell appeals, arguing that the ALJ erred by concluding: (1) that her subjective complaints of pain were not fully credible, (2) that her nonexertional impairments were not severe, (3) that she could return to her past relevant work, and (4) that the opinion of a vocational expert was unnecessary.

## II.

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's

---

[3]Myofascial is "[o]f or relating to the fascia surrounding and separating muscle tissue." Stedman's Medical Dictionary 1168 (26th ed. 1995). "Fascia" is a "sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles, and separates their several layers or groups." Id. at 628.

conclusion.  <u>Id.</u>  In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000).  As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, <u>id.</u>, or because we would have decided the case differently.  <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992).

## A.  Subjective Complaints of Pain

First, Gowell contends that the ALJ erred in discounting her allegations of chronic, disabling pain.  In analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998) (factors from <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).  "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints."  <u>Id.</u>  As we have often stated, "there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is."  <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259 (8th Cir. 1991)).  We will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain, even in cases involving somatoform disorder.  <u>Reed v. Sullivan</u>, 988 F.2d 812, 815 (8th Cir. 1993); <u>Metz v. Shalala</u>, 49 F.3d 374, 377 (8th Cir. 1995).

We conclude that the ALJ's determination is supported by substantial evidence. The record presents many examples of Gowell's physicians reducing or ending her medication and prescribing conservative treatment, noting that Gowell has a full range of motion in her shoulder and arm, little loss of strength, and normal reflexes.  <u>Black</u>,

143 F.3d at 386 (conservative treatment and no surgery consistent with discrediting). Gowell underwent a battery of diagnostic examinations and tests, including MRIs, bone scans, autonomic reflex exams, and vascular studies, some of them multiple times, and the results were unremarkable. Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (lack of organic disorder discredits); but see Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (battery of tests is one indication of severe pain). The ALJ also noted that some of Gowell's statements to various physicians about the accident and her pain were inconsistent, which is an acceptable reason for discrediting her. Hogan v. Apfel, No. 00-1515, 2001 U.S. App. LEXIS 1937, at *8-9 (8th Cir. Feb. 12, 2001). When evaluating Gowell's functional restrictions, the ALJ noted that the restrictions placed on Gowell by Dr. Martimbeau indicated that she retained the functional capacity for certain types of light work. Several vocational rehabilitation centers reached a similar conclusion despite Gowell's complaints of pain. Gowell also refused to follow some recommendations of her physicians, a refusal which may properly be considered when determining her credibility. Anderson, 51 F.3d at 780.

In Gowell's favor, the ALJ noted that Gowell's daily activities are limited. Gowell does few household chores, walks briefly on a treadmill, shops occasionally, and watches television. She testified that she can generally take care of herself, but sometimes relatives help her with self-care such as bathing. Additionally, as the district court correctly pointed out, the abuse of prescription medication may be consistent with disabling pain. Kelley, 133 F.3d at 589 (taking many prescription medications supports complaints of pain); see also Rankin v. Apfel, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). "While these limitations, if accepted as credible, might have supported a disability finding, we will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility." Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996).

The ALJ heavily relied on the opinion of Dr. David Frye, a consulting physician who determined that Gowell was malingering because some of her responses to him

had been evasive and inconsistent. The ALJ noted that Gowell's lying to Dr. Frye contravened the doctrine behind Federal Rule of Evidence 803(4), which provides that statements made by patients to medical professionals for the purposes of diagnosis and treatment are generally credible. We note, however, leaving aside the relevancy of the evidentiary rules, that Dr. Frye explicitly stated to Gowell that he was not examining her for treatment purposes and would refuse to tell her his conclusions. After a careful reading of the record, we also note that Dr. Frye may have somewhat overstated the inconsistencies offered by Gowell and reiterate that the ALJ must fully and fairly develop the facts in the record. Salts v. Sullivan, 958 F.2d 840, 844 (8th Cir. 1992). We conclude, however, that the ALJ's analysis otherwise provides a sufficiently good reason to defer to the ALJ's credibility assessment. Substantial evidence supports the ALJ's determination that Gowell's complaints are not credible to the extent alleged.

### B. Other Nonexertional Impairments

Second, Gowell contends that the ALJ failed to properly consider her other severe nonexertional impairments and points to side effects from her medication. Gowell also alleged the impairment of depression. The ALJ did not mention depression, but properly filled out a Psychiatric Review Technique Form (PRTF), which "is a standard document which generally must be completed when a claimant alleges a mental impairment," Mapes v. Chater, 82 F.3d 259, 262 n.8 (8th Cir. 1996), indicating that he fully considered the assertion that Gowell has a mental impairment. See Russell v. Sullivan, 950 F.2d 542, 544-45 (8th Cir. 1991) (procedure for mental impairments).

There is some evidence in the record that supports Gowell's claim that her depression is disabling. Several doctors have concluded that depression is a major factor preventing Gowell from working, including Dr. Hermie Plunk, who admitted Gowell to the hospital for a nervous breakdown, acute anxiety, and depression in 1990

and 1995.[4]  In the early 1990s, both a neurologist and an emergency room physician reported that depression was a major factor in Gowell's current condition.  Gowell also testified that the side effects of her medication impair her memory and concentration.

The ALJ nevertheless concluded that Gowell had no severe mental impairments that affected her ability to work, primarily relying on the report of psychologist Dr. Michael Inman.  Dr. Inman evaluated Gowell on December 22, 1995, and concluded that she had an above average ability to understand, remember, and carry out instructions and appeared to be capable of responding appropriately to supervision, coworkers, and work pressure.  Dr. Inman noted that Gowell had not sought psychological treatment since a traumatic incident in 1968 and that her "[a]ffect was more consistent with mild hostility" than with depression.  Gowell's reticence to approach psychiatric specialists is understandable given her testimony that in 1981 her second husband had her involuntarily committed.  This fact, however, when considered with her subsequent work history, indicates that Gowell has worked for years with her impairments.  Gowell presented no evidence of ongoing counseling or psychiatric treatment or of deterioration or change in her mental capabilities, factors which disfavor a disability finding.  Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

Because of the weight given to Dr. Inman's opinion as a specialist, Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000), and because the evidence indicates that Gowell has worked for years with whatever impairments she has and has failed to seek recommended psychiatric treatment, see Stephens v. Shalala, 50 F.3d 538, 540 (8th Cir. 1995), we conclude that substantial evidence in the record supports the ALJ's determination that Gowell's mental impairments are not severe.

---

[4]Gowell was also hospitalized for a probable drug overdose later in 1995.

## C.  Past Relevant Work

Third, Gowell asserts that the ALJ erred in determining that her impairments did not prevent her from performing her past relevant work as a cashier and stock clerk. The ALJ determined that although Gowell could not return to work as a truck driver or as a nurse's aid, she could return to employment as a cashier and stock clerk.

The ALJ expressly credited the opinion of Dr. Martimbeau and generally accepted the restrictions the doctor placed on Gowell, properly noting that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight.  See Prosch, 201 F.3d at 1012-13; 20 C.F.R. § 404.1527(d)(2).  The ALJ then determined that Gowell could perform the full range of light work, which is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and which also may require "a good deal of walking or standing, or . . . sitting most of the time with some pushing or pulling . . . ."  20 C.F.R. § 404.1567(b).  The ALJ concluded that Gowell's job as a cashier and a stock clerk would fall into the light work category and within Gowell's particular restrictions, specifically referencing the "cashier/stock clerk" job description outlined by Gowell in a vocational report.  The description reported that the particular job did not require the lifting of more than ten pounds, but did require constant bending, which is inconsistent with Dr. Martimbeau's restrictions.  Despite this incongruity, we conclude that the ALJ's overall determination is supported by substantial evidence.

Although a stock clerk position is classified in the Dictionary of Occupational Titles as heavy-level work likely requiring frequent bending or stooping, cashier positions generally fall within the light or sedentary work classifications.  See United States Dep't of Labor, Dictionary of Occupational Titles, § 299.367-014 (stock clerk, retail trade:  heavy work), § 211.462-014 (cashier-checker, retail trade:  light work),

§ 211.462-010 (cashier II, clerical: light work, no bending requirement), § 211.362-010 (cashier I, clerical: sedentary work, no bending), & App. C (4th ed. 1991). Sedentary work involves lifting no more than ten pounds at a time and generally involves sitting with occasional walking and standing. 20 C.F.R. § 404.1567(a). Vocational rehabilitation specialists and the state's disability determination experts several times concluded that Gowell could perform light work, and Dr. Martimbeau's limitations are generally consistent with that conclusion, and certainly with sedentary level work. We conclude, therefore, that substantial evidence in the record supports the ALJ's determination that Gowell could return to her past relevant work as a cashier. In light of this determination, Gowell's contention that the ALJ should have called a vocational expert is without merit. See 20 C.F.R. § 404.1520(e).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.