Deborah J. DEMARIS, Plaintiff,

v.

Jo Ann B. BARNHART, Commissioner of Social Security, Defendant.

No. C03–3016–MWB.

United States District Court,
N.D. Iowa,
Western Division.

March 4, 2004.

Evelyn K. Ocheltree, Legal Services Corp of Iowa, Mason City, IA, for Plaintiff.

Stephanie Johnson Wright, US Attorney's Office, Cedar Rapids, IA, for Defendant.

**ORDER REGARDING MAGISTRATE
JUDGE'S REPORT AND RECOM-
MENDATION AND PLAINTIFF'S
OBJECTIONS TO REPORT AND
RECOMMENDATION**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* .......................................................865

II. *BACKGROUND* ........................................................865

III. *LEGAL ANALYSIS* ...................................................866
  A. *Standards of Review* .............................................866
  B. *DeMaris's Objections* ............................................866
  C. *Discussion* ......................................................867
    1. *Dr. Mayhew's opinion and DeMaris's claimed depression/anxiety* .....867
    2. *DeMaris's other claimed limitations* ..........................869
    3. *DeMaris's RFC* ................................................872

IV. *CONCLUSION* ........................................................873

## I. INTRODUCTION

The plaintiff Deborah J. DeMaris ("De-Maris") seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Title II disability insurance ("DI") benefits. This matter was referred to United States Magistrate Judge Paul A. Zoss. Judge Zoss recommended judgment be entered in favor of the Commissioner and against DeMaris. (Doc. No. 13). DeMaris filed objections to the Report and Recommendation. (Doc. No. 14). The Commissioner filed no response to DeMaris's objections.

## II. BACKGROUND

DeMaris filed her application on March 9, 2001. She alleges disability due to a combination of non-cancerous breast abnormalities, persistent pain, "possible fibromyalgia," diabetes, high blood pressure, depression and abnormal esophagus. (R. at 96). She is 5'5" tall and weighs around 260 pounds. DeMaris's first application was denied on June 20, 2001 (R. at 64, 66–69), and denied again upon reconsideration, on September 19, 2001. (R. 65,

71–74). On October 1, 2001, DeMaris filed a timely request for hearing before an ALJ. (R. at 75). A hearing was held on April 4, 2002. (R. at 28–63). On September 19, 2002, Demaris's claim was denied by the ALJ. (R. at 10–25). DeMaris filed a request for review by the Appeals Council on November 15, 2002. (R. at 234–56). On December 21, 2002, the Appeals Council denied DeMaris's request for review (R. at 5–7), making the ALJ's decision the final decision of the Commissioner. De-Maris filed a timely request for review in this court on March 28, 2003. (Doc. No. 3).

Judge Zoss, in his Report and Recommendation, concluded the ALJ's decision to deny DeMaris's application for benefits was supported by substantial evidence on the record as a whole. Judge Zoss further found "that although the Record contains evidence to support the contrary position, the Record contains substantial evidence to support the Commissioner's determination that DeMaris was not disabled at any time through June 30, 2001, and she therefore is not entitled to DI benefits." (Doc.

No. 12 at 32–33). Judge Zoss recommended that judgment be entered in favor of the Commissioner and against DeMaris. On November 25, 2004, DeMaris filed her objections with the court. The court waited to see if the Commissioner would file a reply to DeMaris's objections. The court has received no reply and finds the matter is now fully submitted for consideration.

## III. LEGAL ANALYSIS

### A. Standards of Review

■ The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a de novo review of a magistrate judge's report where such review is required. See, e.g., Hosna v. Groose, 80 F.3d 298, 306 (8th Cir.1996) (citing 28 U.S.C. § 636(b)(1)); Grinder v. Gammon, 73 F.3d 793, 795 (8th Cir.1996) (citing Belk v. Purkett, 15 F.3d 803, 815 (8th Cir.1994)). DeMaris has made specific, timely objections in this case. Therefore, de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. See 28 U.S.C. § 636(b)(1).

The standard of judicial review for cases involving the denial of social security benefits is based on 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive." This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir.1998). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." Id. If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.

See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir.2000).

■ The Eighth Circuit Court of Appeals also has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." Hutsell v. Massanari, 259 F.3d 707, 714 (8th Cir.2001) (quoting Easter v. Bowen, 867 F.2d 1128, 1131 (8th Cir.1989)); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir.2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.") (quoting Black v. Apfel, 143 F.3d 383, 385 (8th Cir.1998), with internal quotations and citations omitted). Accordingly, in reviewing the record in this case, the court must determine whether substantial evidence on the record as a whole supports the ALJ's decision that DeMaris is not disabled.

### B. DeMaris's Objections

In DeMaris's objections to the Report and Recommendation, she specified the

parts of the Report and Recommendation to which she objects:

(A) Reliance on the opinion of non-examining psychologists Dr. John Garfield and Dr. Phillip Laughlin to discount the opinion of Dr. Mayhew (Rept. pp. 15–16)[.]

(B) Finding the ALJ's decision that Ms. DeMaris could perform light work was supported by substantial evidence on the record as a whole (Rept. pp. 32–33).

(Doc. No. 14).

DeMaris's first objection is that the Report and Recommendation relies on the opinion of two non-examining psychologists, Dr. Garfield and Dr. Laughlin. DeMaris asserts that because Dr. Mayhew actually examined DeMaris and opined that her depression and anxiety interfere with her ability to do sustained gainful activity, that this opinion should outweigh the opinions of Dr. Garfield and Dr. Laughlin. DeMaris's second objection is to Judge Zoss's finding that substantial evidence on the record as a whole supported a finding that DeMaris could perform light work. DeMaris asserts that the medical evidence, her daily activities, financial inability to obtain additional treatment, the fact that her pain is not well-controlled—despite a number of different treatments, her work history, Dr. Mayhew's report and her own subjective complaints all support a finding of disability.

### C. Discussion

■ As stated above, a district court's standard of review is narrow and the court will affirm an ALJ's findings if the findings are supported by substantial evidence on the record as a whole. *Beckley v. Apfel,* 152 F.3d 1056, 1059 (8th Cir.1998). After a district court reviews the record, if the court finds that it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision." *See*

*Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000).

### 1. Dr. Mayhew's opinion and DeMaris's claimed depression/anxiety

■ DeMaris contends that Dr. Mayhew's statement that her, "current psychiatric symptoms of depression and anxiety in combination with her physical conditions would appear to not only support impairment but impairment which would interfere with sustained gainful activity" combined with her subjective complaints, supports an award of disability. DeMaris contends that the ALJ improperly relied on two non-examining psychologists' opinions and erred by discounting the opinion of Dr. Mayhew. The Commissioner argues that although Dr. Mayhew provided a diagnosis of major depression he did not reference any symptoms to justify that diagnosis. Further, the Commissioner contends that the ALJ properly discounted Dr. Mayhew's opinion because Dr. Mayhew was relying almost entirely on DeMaris's subjective complaints when he determined that she was disabled. Although DeMaris argues that the Commissioner erred when he discounted Dr. Mayhew's opinion and relied on the opinions of two non-examining psychologists, a review of the ALJ's decision indicates that the ALJ relied on much more than the opinions of these two non-examining psychologists when he discounted Dr. Mayhew's opinion.

The fact that Dr. Mayhew's, an examining source, opinion is entitled to more weight than the opinion of non-examining sources does not mean that the opinions of the non-examining sources and medical advisors are entitled to little or no weight. When an ALJ rejects the opinion of an examining source in reliance on the testimony of non-examining sources, the reports of non-examining sources need not

be discounted and may serve as substantial evidence when the reports are supported by other evidence in the record and are consistent with it. However, the opinions of non-examining sources, alone, are insufficient to constitute substantial evidence supporting rejection of the opinion of an examining source.

The opinions of the non-examining sources were not considered alone but in addition to other evidence in the record. The ALJ acknowledged that the medical evidence shows DeMaris has a "longstanding" history of depression. (R. at 15). The ALJ recognized that Dr. Mayhew assessed DeMaris with a recurrent major depression, dependent personality features, and a history of panic attacks. (R. at 15). However, the ALJ found that Dr. Mayhew's opinion that DeMaris's ability to complete a normal work day was markedly limited, was based on his consideration of DeMaris's *"physical* and mental complaints" and this was not Dr. Mayhew's area of expertise. (R. at 15). The ALJ discounted Dr. Mayhew's opinion because Dr. Mayhew's consultive report was "based on his assessment as secondary to [DeMaris's] purported physical complaints." (R. at 17). The ALJ properly discounted Dr. Mayhew's opinion. Further, the ALJ found that the medical evidence contained on the record as a whole "showed [DeMaris's] depression as well as her hypertension to be controlled by medication." (R. at 17). The record contains many references to DeMaris's use of medications to control her depression and anxiety. (R. 42, 138, 145, 150, 156, 158, 186). The evidence in the record indicates that DeMaris takes medication for her depression and anxiety. Further, DeMaris testified before the ALJ that her depression and anxiety are controlled by medication:

Q. Do you remember seeing Dr. Mayhew, a psychologist?

A. Yes. Yes. I do.

Q. And you read his report?

A. Yes.

Q. He indicated that you have depression. Would you agree with that?

A. Yes.

Q. And history of panic attacks or anxiety?

A. Yes.

Q. Do you still struggle with those?

A. On the medication, no.

(R. at 37–38).

The ALJ's decision, to discount Dr. Mayhew and find that DeMaris's depression and anxiety are controlled by medication, is further supported by the fact that the record contained no evidence of DeMaris seeking continued counseling or professional mental health treatment. (R. at 17). Although DeMaris has a history of depression and anxiety, and continued treatment through the use of medication, the record contains no evidence that any treating source opined DeMaris's depression and anxiety was not controlled. Dr. Mayhew may have examined DeMaris, but he was not a treating source. *See Pratt v. Sullivan,* 956 F.2d 830, 834 (8th Cir.1992) (finding less weight can be given to non-treating source). After discounting Dr. Mayhew's opinion the ALJ found DeMaris's mental impairment resulted in only a:

"mild" restriction of activities of daily living, maintaining social functioning, and "moderate" limitations in her ability to maintain concentration, persistence and pace. The [ALJ] further conclude[d] that the claimant's mental impairment had resulted in no episodes of deterioration or decompensation.

(R. at 18).

Additionally, as observed by Judge Zoss in his Report and Recommendation, if the court finds that it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the

Commissioner's findings, the court must affirm the Commissioner's decision." This court does not question the fact that De-Maris experiences restrictions in her daily living because of her mental impairments but these restrictions are not severe enough to warrant a finding of disability.

The court notes DeMaris is able, through assistance programs, to receive certain medications for this impairment and that she testified she does not "struggle" with this problem when she is "on the medication." The record does not contain evidence that DeMaris is unable to obtain medication for her mental impairments because of her financial situation. Based on the record before the court, it may be possible to draw two inconsistent positions but because one of those positions represents the Commissioner's findings this court must affirm the Commissioner's decision. Therefore, DeMaris's objection as to this issue is overruled.

### 2. DeMaris's other claimed limitations

■ DeMaris asserts that when all the evidence is scrutinized—the objective medical evidence, subjective complaints, daily activities, the fact that her pain is not well-controlled despite a number of treatments, her work history, and her financial inability to obtain additional treatment, it supports a finding of disability. DeMaris contends her testimony and description of her limitations is credible.

■ The courts "will not disturb the decision of an [ALJ] who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain." *Pena v. Chater,* 76 F.3d 906, 908 (8th Cir.1996) (quoting *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir.1992)). As the Eighth Circuit Court of Appeals has explained,

In analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998) (factors from *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Id.* As we have often stated, "there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993) (quoting *Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir. 1991)). We will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain, even in cases involving somatoform disorder. *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir.1993); *Metz v. Shalala,* 49 F.3d 374, 377 (8th Cir.1995).

*Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir.2001); *see also Dunahoo,* 241 F.3d at 1038 (also identifying the *"Polaski* factors" for analyzing subjective pain complaints); *Hogan v. Apfel,* 239 F.3d 958, 961–62 (8th Cir.2001) (also identifying the *"Polaski* factors").

An ALJ meets his or her burden to demonstrate grounds for disregarding subjective complaints where the ALJ articulates the inconsistencies on the record as a whole. *Johnson,* 240 F.3d at 1149; *see also Dunahoo,* 241 F.3d at 1038 ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."). Moreover, "[i]f the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment *even if every [Polaski] factor is not discussed in depth." Dunahoo,* 241 F.3d at 1038 (emphasis added) (finding

further that the ALJ's decision was adequate where "[t]he ALJ recited the five *Polaski* factors and detailed the relevant evidence"); *Hogan*, 239 F.3d at 962. "Any arguable deficiency ... in the ALJ's opinion-writing technique does not require the Court to set aside a finding that is supported by substantial evidence." *Johnson*, 240 F.3d at 1149. Further, the Eighth Circuit Court of Appeals has determined that the "mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir.1996). With the Eighth Circuit's rulings as a guide, the court now considers DeMaris's objections to Judge Zoss's finding that her pain is not disabling.

In this case the ALJ gave full consideration to DeMaris's subjective complaints within the context of all of the other evidence in the record and observed:

> The issue of credibility in this case cannot be discussed analytically in absolute terms, but must be measured by degree. The claimant testified, and may honestly believe that her limitations preclude her from performing work. However, it is the duty of the undersigned to accurately determine the degree of the claimant's limitations and residual functional capacity based upon the testimony presented and the totality of all of the other evidence of record.
>
> .    .    .    .    .
>
> There is no medical evidence or opinion from a treating physician that the claimant was disabled.... After review of the record as a whole ... the testimony of the claimant paints a picture far more severe than that documented by the medical record.

(R. at 17).

The ALJ discussed the objective medical evidence and DeMaris's subjective complaints. The ALJ was allowed to discount DeMaris's subjective complaints because there were inconsistencies existing among that evidence. *See Conley v. Bowen*, 781 F.2d 143, 146–47 (8th Cir.1986) (per curiam)(a claimant's subjective complaints may be discounted when inconsistencies exist among the evidence). The ALJ found that DeMaris's subjective complaints were not fully supported by the record and her symptoms were not as limiting as alleged prior to her date last insured. (R. at 18).

The ALJ's decision reflects that it was all the other evidence in the record combined with the ALJ's observations during the hearing that persuaded the ALJ that DeMaris's allegations of disabling limitations prior to the date last insured were not fully supported by the record. (R. at 18). DeMaris's last date insured was June 30, 2001. The ALJ determined that DeMaris's testimony was credible in that she may honestly believe that her limitations preclude her from performing work. However, as noted by the ALJ, an ALJ is to determine the degree of limitation and the RFC based upon the testimony presented and the totality of all of the other evidence in the record.

The ALJ found DeMaris "took little medications [for pain] from 1995 through 1998." (R. 17, 137–148). DeMaris's medical records from her treating physician contain information regarding treatment of hypertension, diabetes, and depression between 1995 and 1998, but there is little to no mention of treatment for pain. (R. at 137–148). Further, prior to her last date insured, the records from DeMaris's treating physician only briefly mention allegations of pain, once during a doctor visit, June 19, 1995 (R. at 146), and again on July 13, 2000. During a telephone conversation on July 17, 2000 the record indicates DeMaris complained of back and leg pain and there is a notation that she has had this pain for four years. (R. at 201). At

this time her treating physician advised her to try Tylenol Arthritis for treatment of the reported pain. (R. at 201). Between August 2000 and March 2000, there is no mention of reported pain to her treating physician in the medical records. (R. at 197–202). There is evidence in the record, dated just before June 30, 2001, and then shortly after, in which DeMaris's allegations of back pain, leg cramps, numbness are documented in her treating physician's notes. (R. at 220–230). When DeMaris was seen in February 2002, the record indicates her physician talked to her about "diet, exercise, and pain management" and that "[DeMaris] understands, although she is not happy with my explanations." (R. at 230). The ALJ determined that the record did not contain significant evidence of allegations of severe pain prior to DeMaris's last date insured. The ALJ determined that any evidence of severe pain began to emerge and to be reported to her physician after her last date insured and therefore that evidence does not support a finding that she had severe limitations of pain prior to her last date insured. (R. at 17). The ALJ determined that because a comparison of the other evidence in the record to DeMaris's subjective complaints of pain revealed inconsistencies, DeMaris did not experience disabling pain prior to her last date insured.

DeMaris also argues that her pain is not well-controlled despite a number of treatments. The record does not contain evidence that DeMaris sought a number of treatments for her pain prior to her last date insured. In fact it was noted in 1998 that she had not seen the doctor for several months. (R. at 138). In addition, the record indicates that her diabetic symptoms were not well-controlled because she was not always compliant with her treatment regimen. (R. at 15, 17, 189, 193, 204–05). Progress notes reveal instances where DeMaris failed to take her diabetic

mediation and/or was not monitoring her blood sugars. Further, when her doctor recommended that she reduce her weight she was noncompliant. (R. at 204–05).

Although DeMaris claims her daily activities are limited, thus further supporting a finding of disability, there is no evidence in this record that her daily activities have become more limited since her date of claimed disability. She does household chores, dishes, dusting, cooking, and vacuuming. (R. 46–47, 51). She enjoys reading. (R. at 46, 52). She likes to listen to music and watch television. (R. at 52). Occasionally, perhaps once or twice a month, she will stay in bed all day. (R. at 54). She does not go out on a regular basis and she keeps in contact with friends by telephone. She does not belong to any club or social organization. She has a license and is able to drive, but her husband usually is with her. (R. at 52, 56). She tries not to lift anything heavier than the dishes. (R. at 55–56). She indicated that her ability to care for herself has not changed since her illness. (R. at 107). The ALJ considered DeMaris's daily activities. Although these daily activities alone do not support or disprove disability, they are only one factor to consider in evaluating the subjective complaints of the claimant. The ALJ could conclude that these activities were simply inconsistent with DeMaris's alleged claim of disabling pain.

DeMaris argues that because of her financial situation she has been unable to obtain additional treatment. A claimant's failure to seek medical treatment cannot be wholly excused due to her claims of financial hardship. *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) ("lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations"). In DeMaris's case, there was no evidence that

she has sought to obtain low-cost medical treatment from doctors or clinics, or has been denied medical care due to her financial condition. *See Murphy,* 953 F.2d at 386–87 (citing *Benskin v. Bowen,* 830 F.2d 878, 884 (8th Cir.1987)). During the hearing, DeMaris never indicated that she had been refused treatment due to financial reasons but she did testify that she would "like to get more doctoring and therapy if I had the finances." (R. 55). The record reveals no evidence that DeMaris had been or would have been refused medical treatment due to financial reasons. DeMaris has refused medical treatment due to her alleged financial situation but she has never been refused treatment due to financial reasons. The record reveals that DeMaris's alleged severity of pain and her subjective complaints do not coincide with the medical treatment sought by DeMaris. In addition, DeMaris has been receiving, through medical assistant programs, prescriptions at a reduced rate. Several times throughout the record it indicates she was given medication "samples" at no cost. (R. at 138, 143, 145, 147). Her doctor contacted her pharmacy to arrange for her to receive cheaper medications. (R. at 147). The record does not support DeMaris's contention that because of her financial situation she has been unable to obtain additional treatment.

DeMaris also argues that her work history supports a finding of disability. An ALJ must consider whether the claimant is capable of making an adjustment to other work. DeMaris's work history includes a one-year cosmetology course, and some correspondence courses in home health care. (R. at 31–32, 34). She has worked as a nursing assistant and when she worked with hospice and Amacare she prepared meals, administered medications, and did housekeeping duties. (R. at 33). The fact that she worked as a home health aide and, after the deaths of the husband and wife she cared for, she never attempt-ed to find other work, does not support a finding of disability. Contrary, the fact that she did not leave her prior employment because of pain but rather because the position ended for other reasons could be considered inconsistent with her claims of disabling pain. (R. at 35–36).

An ALJ meets his or her burden to demonstrate grounds for disregarding subjective complaints where the ALJ articulates the inconsistencies on the record as a whole. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984). Inconsistencies between DeMaris's subjective complaints and the objective medical evidence, medical opinions, the reason for her employment ending, noncompliance with medication use, failure to follow physician recommendations all support the ALJ's decision. The court concludes that the ALJ's finding that there were inconsistencies is supported by substantial evidence on the record as a whole. Therefore, DeMaris's objections as to these issues are overruled.

### 3. DeMaris's RFC

■ DeMaris also asserts that if the proper residual functional capacity ("RFC") is considered that she is not able to perform any type of competitive employment. The RFC is determined by considering all the relevant, credible evidence of the record, including medical records, observations of treating physicians and others, and the claimant's own description of her functional limitations. *See McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000).

The ALJ determined that DeMaris retained the following RFC:

[P]erform simple, routine work and that she was able to lift and or carry 10 pounds frequently, 20 pounds occasionally, stand/walk/sit, as long as she could alternate sitting and standing every

hour. Additionally, the claimant was able to occasionally bend, stoop, squat, crawl, push and/or pull, but she was limited in her ability to climb. Furthermore, she should not have performed work involving more that basic math or the need to recall numbers or information to be related to others as part of the job functions. (R. at 18). As part of the evaluation process, the ALJ must also consider DeMaris's mental impairments. The ALJ rated DeMaris's degree of functional limitations in four broad functional areas and determined that she had only "mild" restriction of activities of daily living, maintaining social functioning, and "moderate" limitations in her ability to maintain concentration, persistence and pace. (R. at 18). The ALJ found that DeMaris's mental impairment had resulted in no episodes of deterioration or decompensation. (R. at 18). The record reveals that prior to DeMaris's last date insured there is no objective medical evidence that she could not lift ten pounds frequently and up to twenty pounds on occasion. No treating physician recommended that she lie down during the day for relief of her symptoms. *See Hanna v. Chater*, 930 F.Supp. 378, 389 (N.D.Iowa 1996) (the claimant's alleged need for frequent breaks had no basis in any of the medical evidence or recommendations of the claimant's physicians, and the ALJ could perceive this absence of evidence as inconsistent with claimant's need for frequent breaks). As previously discussed, DeMaris's claimed depression/anxiety is controlled by medication and the ALJ's findings of "mild" and "moderate" limitations are supported by substantial evidence on the record as a whole. The ALJ's RFC adequately accounted for DeMaris's limitations. Therefore, DeMaris's objection as to this issue is denied.

Having reviewed the record the court agrees with Judge Zoss that this is a case were it is possible to draw two inconsistent conclusions from the evidence and, therefore, the court must defer to the Commissioner's decision that DeMaris could perform other work.

### IV. CONCLUSION

Upon *de novo* determination of those portions of the Report and Recommendation, or specified proposed findings or recommendations to which DeMaris has made objections, *see* 28 U.S.C. § 636(b)(1), the court finds that DeMaris's objections must be **overruled**. Therefore, the Report and Recommendation concerning disposition of this matter is accepted. *see* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].")—**judgment shall enter in favor of the Commissioner** and against DeMaris in this action.

**IT IS SO ORDERED.**