# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3854

_____

Carmen Lewis,                     *
                                  *
          Appellant,         *
                                  *     Appeal from the United States
   v.                    *     District Court for the
                                  *     Western District of Missouri.
Jo Anne B. Barnhart,       *
Commissioner of Social Security,   *
                                  *
          Appellee.          *

_____

Submitted: September 8, 2003

Filed: December 30, 2003

_____

Before SMITH, LAY, and BRIGHT, Circuit Judges.

_____

SMITH, Circuit Judge.

Carmen Lewis applied for social security disability insurance benefits ("SSDI") under 42 U.S.C. §§ 401–433 (2003) and supplemental security income benefits ("SSI") under 42 U.S.C. §§ 1381–1383c (2003), but the Social Security Administration denied her application initially and on reconsideration. Lewis appeals

from an order of the district court[1] affirming the Social Security Commissioner's decision denying both SSI and SSDI. We affirm.

## I. *Background*

Lewis's January 23, 1997, application alleged a disability onset date of September 30, 1996. Lewis stated that she was unable to work because of a variety of impairments, including back, knee, and ankle pain, major headaches, and asthma. She alleges that the pain prevents her from performing any type of work.

A hearing was held before an administrative law judge ("ALJ") on September 25, 1998. Lewis, who was thirty-eight years old at the time of the hearing, had worked primarily in unskilled positions requiring semi-physical labor. She completed the tenth grade and received a General Equivalency Diploma in 1985. Her past work included kitchen helper, security guard, and assembly worker. She last worked in 1995.

Regarding her physical impairments, Lewis testified that she had severe pain in her lower back. The pain limited Lewis such that she could only stand comfortably for thirty minutes, walk about one block, climb one flight of stairs, carry ten pounds, and sit for about thirty minutes. Lewis also testified that she had problems with muscle spasms in her legs and back, forcing her to lie down three to five times per day for about an hour at a time. She stated that she had problems holding objects in her hands. Additionally, Lewis testified that she had difficulty reaching over her head with either arm, experienced swelling in her feet, knees, and hands several times per week, experienced headaches, which lasted one to four hours, three to four times per week, and had problems with her memory. Besides her pain allegations, Lewis also described respiratory difficulties due to asthma and bronchitis. Lewis treated her

---

[1] The Honorable Fernando J. Gaitan Jr., United States District Judge for the Western District of Missouri.

various pain and respiratory symptoms with medications, several of which made her drowsy.

Testifying as to her mental stability, Lewis stated that she had crying spells once a week, had thoughts of suicide, and had problems coping with the recent deaths of several family members. She testified that it was difficult for her to concentrate and to finish tasks, and that she quickly became angry. Lewis claimed that she would sweat and tremble two or three times per day. Regarding her activities, Lewis testified that she did not go to the grocery store or go fishing as often as in the past. Lewis testified that her daily activities consisted of washing dishes, doing laundry, cooking, watching television, and reading.

The ALJ found that Lewis's assertions of disabling pain were not fully credible. Specifically, the ALJ determined that she had the physical ability to perform limited exertional demands despite her alleged ankle, back, and knee pain, and headaches. The ALJ concluded that Lewis could return to her previous work as an assembly worker or, in the alternative, that jobs exist in the national economy that Lewis could perform. Thus, the ALJ determined that Lewis was not disabled.

On October 17, 2000, the Appeals Council of the Social Security Administration denied Lewis's request for review of the ALJ's decision. The decision of the Appeals Council stands as the final decision of the Commissioner. Lewis then sought judicial review in the United States District Court for the Western District of Missouri. The district court affirmed the Commissioner, and Lewis appeals.

In this appeal, Lewis makes two arguments. First, she contends that the ALJ's decision that she could return to her past relevant work was not supported by substantial evidence. Second, she argues that the ALJ posed a defective hypothetical question to the vocational expert because it did not include specific findings of the consultative psychologist, as set forth in a November 1999 medical assessment.

-3-

II. *Discussion*

On appeal, we review de novo the district court's grant of summary judgment upholding the ALJ's denial of social security benefits. *Box v. Shalala*, 52 F.3d 168, 170 (8th Cir. 1995). "Our role is to determine whether the Secretary's decision is supported by substantial evidence on the entire record." *Id.* (quoting *Cook v. Bowen,* 797 F.2d 687, 690 (8th Cir. 1986)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from the decision. *Id.* (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a physical or mental disability, and Title XVI provides for the payment of disability benefits to indigent persons. The Act further provides that "an individual shall be determined to be under a disability [2] only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A) (2003).

The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a) (1986). The

---

[2] Both titles of the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2003).

-4-

Commissioner determines: (1) whether the claimant is engaged in substantial gainful activity, and if he is, disability benefits are denied; (2) whether the claimant has a medically severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities, including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting; (3) whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity, and if so, the claimant is disabled; (4) whether the impairment prevents the claimant from performing work he has performed in the past; (5) if the claimant is able to perform his previous work, he is not disabled; however, if the claimant cannot perform past work, the burden shifts to the Commissioner to prove that the claimant is able to perform other work in the national economy in view of [her] age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Baker v. Apfel*, 159 F.3d 1140, 1143–44 (8th Cir. 1998); *Kelley*, 133 F.3d at 587–88; 20 C.F.R. § 404.1520(a), (b), (c), (d), (e) (1986).

Although it was not required in this case, the ALJ's analysis proceeded through all five steps of the claim-evaluation process. The ALJ found that Lewis satisfied the requirements of step one and two and proceeded to the remaining steps of the process. Because Lewis's impairments did not meet the criteria for any listed impairments in step three, the ALJ proceeded to step four. *See Yuckert*, 482 U.S. at 141; *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir. 2001). Step four requires the ALJ to consider the claimant's residual functional capacity ("RFC") and the physical and mental demands of the claimant's past work. *Nimick v. Sec'y of Health and Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989). When determining a claimant's RFC, the ALJ's determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th

Cir. 2002). RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, "what the claimant can still do" despite his or her physical or mental limitations. *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986). Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC. *Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997).

The ALJ reviewed the medical evidence and determined that Lewis possessed the RFC to return to her past work as an assembly worker. Lewis's medical records included reports from three physicians. First, Edna C. DeCastro, M.D., performed a consultative disability examination on Lewis on August 26, 1997. Dr. DeCastro noted that Lewis was alert, oriented, pleasant, cooperative, and well-developed. Although Lewis complained of severe disabling pain in her joints, the doctor noted that Lewis's joints showed no evidence of synovitis, swelling, or tenderness, her knees showed no crepitus, and she had full passive ranges of motion of all her joints. Dr. DeCastro indicated that Lewis's chronic low back pain, headaches, and asthma were caused by her lack of daily exercise and abuse of tobacco.

Second, Zubin G. Khubchandani, M.D., at the Truman Medical Center Orthopedic Clinic, examined Lewis in January 1998. Lewis complained of low back pain that had worsened after traffic accidents in 1990 and 1996. Lewis reported some relief with pain medications, but stated that she was unable to work because of the constant pain. On examination, Lewis had tenderness to palpation over the posterior superior iliac spine bilaterally. Dr. Khubchandani found that Lewis had good motor strength in her legs, normal light touch sensation with the exception of some decreased sensation over the little toes, normal patellar and knee jerk reflexes, and negative straight leg raising bilaterally. Dr. Khubchandani diagnosed low back pain and recommended that Lewis stop smoking because smokers have an increased risk for chronic back pain. Also, similar to Dr. DeCastro's advice, Dr. Khubchandani

advised that Lewis undergo physical therapy for back strengthening and stretching, and take part in aerobic activity such as swimming, cycling, and walking. The doctor stated that he could not offer Lewis anything surgical and explained that chronic-low back pain is lessened strictly by management.

Third, under the direction of psychologist Dr. Minnie Koresko, Lewis underwent a post-hearing neuropsychological evaluation in November 1999. The results of her evaluation indicated that Lewis could perform satisfactorily in a job that was routine and in a work environment that did not offer multiple stimuli that would cause Lewis's attention to divert.[3]

Relying on the opinion of the medical doctors and on Lewis's own testimony, the ALJ concluded that Lewis had the RFC to return to her previous job as an assembler. The ALJ determined that Lewis could ameliorate her alleged disabling conditions by participating in aerobics and ceasing to smoke cigarettes.

However, proceeding to step five, the ALJ also found–based on the vocational expert's testimony–that there were a significant number of jobs in the area for a worker with Lewis's RFC.

A. *Substantial Evidence to Support the ALJ's Decision*

The record provides substantial evidence on the record as a whole to support the ALJ's decision that Lewis can return to her past work as an assembler. According to the vocational expert, the physical and mental demands of an assembly worker are

_____

[3] With regard to Lewis's cognitive functions, Dr. Koresko indicated that Lewis had the ability to learn and adapt to unfamiliar situations and comprehend verbal communication. Dr. Koresko also indicated that Lewis had adequate intellectual functioning for jobs that did not require complex problem solving, decision making, or sustained focus and attention. On the memory test, Lewis's performance was normal.

limited. Assembly work as customarily performed in the national economy is often unskilled, non-detailed, and not shown to entail duties beyond light exertion. Lewis contends that she is unable to work as an assembly worker because of the severe pain she experiences in her knees, back, and ankles.

The ALJ discounted Lewis's subjective allegations of disabling pain. "[T]he ALJ must consider the claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions" when evaluating a claimant's alleged pain. *Baker*, 159 F.3d at 1144. When analyzing this criteria, the ALJ makes an express credibility determination of the claimant's allegation and discounts those subjective pain complaints that are not credible. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's complaints of pain, the ALJ's express credibility determination must detail the reasons for discrediting the testimony and set forth the inconsistencies found. *Baker*, 159 F.3d at 1144.

Lewis's pain complaints are not supported by the record on the whole; however, the evidence does support the ALJ's decision to discount Lewis's complaints. Both Dr. DeCastro and Dr. Khubchandani concluded that Lewis could reduce the pain that she felt in her joints and the uncomfortable effects of asthma if she refrained from smoking and exercised daily. Lewis has failed to adhere to this advice. Furthermore, Dr. Koresko concluded that Lewis could perform satisfactorily in a job that was routine and in a work environment which did not offer multiple stimuli that would divert Lewis's attention. Moreover, Lewis's medical records show that she has full range-of-motion in her joints, normal back curvature, and is alert, oriented, able to sit, stand, walk, lift, and carry. The doctors indicated all that was required for Lewis to successfully manage her alleged pain was to participate in aerobics and stop smoking. Instead, Lewis's own actions discredit her disability allegations because she continues to smoke cigarettes daily and does not exercise.

The ALJ found that Lewis was not disabled within the meaning of the Social Security Act. Specifically, the ALJ found that Lewis has the RFC to perform the exertional demands of sedentary work in that she is able to lift and carry up to twenty pounds occasionally; to stand or walk thirty minutes at a time for six hours of an eight hour day; and to sit thirty minutes at a time for six hours of an eight hour day. The ALJ noted that Lewis's capacity for the full range of light work is diminished by non-exertional and psychologically-based limitations in that she sustains some fatigue from her medications and experiences some pain. Lewis is restricted from more than occasional stooping, crouching, crawling, balancing, kneeling, and other forms of climbing. The ALJ found that Lewis was moderately limited in her ability to understand, remember, carry out detailed instructions, and maintain attention and concentration for extended periods. The ALJ's conclusion is supported by substantial evidence on the record as a whole that Lewis can do "light work" as an assembler.

Once we have found that there is substantial evidence on the record as a whole to support the ALJ's decision concerning a claimant's disability, the five-step analysis need go no further. *Baker*, 159 F.3d at 1143–44. Vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (en banc); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994). Therefore, Lewis's claim that the ALJ posed a defective hypothetical to the vocational expert is moot.

### III. *Conclusion*

Because we hold that substantial evidence on the record as a whole supports the ALJ's decision that Lewis retained the RFC to return to her past relevant work, there is no need to address Lewis's second argument. Accordingly, the judgment of the district court is affirmed.

_____