# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1518

_____

Annie Bell Brown,                          *
                                           *
           Appellant,                      *
                                           *    Appeal from the United States
      v.                                   *    District Court for the Western
                                           *    District of Arkansas.
Jo Anne B. Barnhart, Commissioner,         *
Social Security Administration,            *
                                           *
           Appellee.                       *

_____

Submitted:   September 16, 2004
     Filed:   December 2, 2004

_____

Before LOKEN, Chief Judge, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Annie Bell Brown appeals the decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits under Title II of the Social Security Act. An administrative law judge (ALJ) upheld the Commissioner's decision. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. Brown

appealed to the district court,[1] which affirmed the Commissioner's decision.  Brown appeals, and we likewise affirm.

## I.    BACKGROUND

Annie Bell Brown was born in 1954.  She attended school through the eighth grade and lives with a daughter who suffers from cerebral palsy.  Her past jobs include work as a packager, assembly-line worker, and cleaner.  Brown claims her disability began in July 1999.  She further claims her disabilities involve coronary artery disease, uncontrolled hypertension, residual effects from a cerebrovascular accident with myocardial infarction, and mental illness.  Brown filed an application for disability insurance benefits with the Social Security Administration on October 27, 2000.

## II.    DISCUSSION

We review de novo a district court's decision to affirm the denial of social security benefits.  Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000).  In conducting this review, we determine whether the ALJ's decision to deny benefits is based on legal error, and "whether the findings of fact are supported by substantial evidence in the record as a whole."  Id.  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).  In determining whether substantial evidence exists, "we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."  Id.  Where substantial evidence supports the Commissioner's decision, "we may not reverse it because substantial evidence exists in the record that would have supported

---

[1] The Honorable Bobby E. Shepherd, United States Magistrate Judge for the Western District of Arkansas, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

a contrary outcome, or because we would have decided the case differently." Id. (citation omitted).

## A.    The Regulatory Scheme

To be eligible for disability benefits, the claimant must meet the insured status requirements under Title II.   See 20 C.F.R. §§ 404.101-404.146.   Once the Commissioner determines a claimant is insured, he uses a five-step sequential process to determine  whether the claimant is disabled for purposes of  Title  II.   20 C.F.R. § 404.1520(a)-(g).  If a claimant can be classified at any step, the Commissioner does not go on to the next step.  Id. § 404.1520(a)(4).  At the first step, if the claimant is working and such work is "substantial gainful activity," she  is  not  disabled.   Id. § 404.1520(b).  At the second step, if the claimant is found not to have a "severe impairment," she is not disabled. Id. § 404.1520(c).  "Severe impairment" is defined as any impairment or combination of impairments that significantly limits physical or mental ability to perform basic work, not considering age, education, and work experience.  Id.   At the third step, if the claimant has an impairment that the Commissioner has deemed is so severe as to preclude ability to work, and has had or will have that impairment for at least twelve months, the claimant is disabled.   Id. § 404.1520(d).  At steps four and five, the Commissioner determines whether the claimant's impairments keep her from performing her past relevant work or from making an adjustment to any other work.  Id. § 404.1520(f)-(g).

Steps four and five first require a finding of the claimant's "residual functional capacity" (RFC).  Id. § 404.1520(e).  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."  Id. § 404.1545(a)(3).  Limitations resulting from symptoms such as pain are also factored into the assessment.  Id.  "When determining

a claimant's RFC, the ALJ's determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." Id. Under the fourth step, once the claimant's RFC is determined, it is compared with the physical and mental demands of the claimant's "past relevant work." 20 C.F.R. § 404.1560(b). Past relevant work is work the claimant has done within the past fifteen years that was "substantial gainful activity," and that lasted long enough for the claimant to learn how to do it. Id. § 404.1560(b)(1). If the Commissioner determines the claimant's RFC allows her to perform her past relevant work, she is not disabled. Id. § 404.1520(f). Step five asks, where it is determined a claimant cannot perform their past relevant work, whether they nonetheless can adjust to any other work that exists "in significant numbers in the national economy." Id. § 404.1560(c). If so, the claimant is not disabled. Id. § 404.1520(g).

The ALJ found that Brown was insured for disability benefits through December 31, 2000. Applying the five-step process, he found that Brown had not been working as defined by the regulations since her alleged onset date of July 10, 1999. He also found that Brown had coronary artery disease that resulted in myocardial infarction, degenerative disc disease, uncontrolled hypertension that caused multiple strokes, depression disorder, and a personality disorder, all of which were severe as defined by the regulations. These impairments, however, were not listed impairments under step three, requiring a RFC finding and further analysis under steps four and five. At step four, the ALJ concluded that Brown's RFC allowed her to continue her past relevant work as a packager and cleaner. Thus, the ALJ concluded that Brown was not disabled during the period of her insured status.

**B. Residual Functional Capacity**

Brown first argues that the ALJ's determination that she retained the RFC for light work on and before December 31, 2000, the date she was last insured for Title II benefits, is not supported by substantial evidence. In particular, Brown contends the ALJ improperly discounted the opinion of her treating physician, Dr. Jerry Stringfellow, that she was disabled, and also improperly discounted Brown's own subjective complaints of pain.

Substantial evidence in the record supports the ALJ's finding that Brown retained the RFC for light work while insured. The ALJ considered Brown's testimony of her symptoms and physical limitations; the medical evidence regarding her history of back pain, hypertension, coronary artery disease, and mental health; the testimony of Dr. Tauber, a qualified medical expert on what the objective medical evidence indicated; and Dr. Stringfellow's opinion evidence. In both a medical report and an April 2002 "deposition,"[2] Dr. Stringfellow said Brown was disabled due to unstable labile hypertension. In that "deposition," he directly stated that the neck pain Brown complained of would not disable her, but the severe hypertension and associated cardiovascular disease did. The coronary artery disease, however, was not diagnosed until December 2001, almost one year after Brown's insurance under Title II ended. Thus, evidence of Brown's coronary artery disease can have no bearing in this case.

---

[2]While Brown refers to the statements Dr. Stringfellow gave under oath in April 2002 following the February 2002 ALJ hearing as "deposition" testimony, the questioning was conducted exclusively by Brown's attorney with no opposing counsel present. Dr. Stringfellow's statements are, in essence, an affidavit.

### 1. Dr. Stringfellow's Opinion

The ALJ did not give controlling weight to Dr. Stringfellow's opinion of disability based on hypertension because of Brown's documented non-compliance with prescribed treatment. Generally, "[a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (quotations omitted). However, a statement by a medical source that a claimant is disabled does not necessarily mean the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1527(e)(1). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as whole." Hogan, 239 F.3d at 961. If the Commissioner finds a treating doctor's opinion regarding impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527 (d)(2).

Here, after evaluating the record as a whole, the ALJ found Dr. Stringfellow's opinion inconsistent with ample evidence of Brown's noncompliance with prescribed hypertension treatment. The record shows that during one visit to Dr. Stringfellow, Brown readily admitted she wasn't taking her Clonidine like she should, and on a number of other visits, Dr. Stringfellow noted Brown's history of noncompliance. He also noted he had discussed with her on several occasions the importance of taking her medication. "'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Id.; see also 20 C.F.R. § 416.930(b). Brown claims her noncompliance is justified because she cannot afford the prescribed medication. This court has held that "a lack of sufficient financial resources to follow prescribed

treatment to remedy a disabling impairment may be . . . an independent basis for finding justifiable cause for noncompliance [with prescribed treatment]." Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir. 1984). Yet, the record shows Brown had access to free samples of hypertension drugs, sought medical treatment regularly, and had medical insurance coverage from 1998 through 2001. Such evidence is inconsistent with Brown's claim that a lack of financial resources kept her from acquiring the treatment prescribed for her hypertension.

Brown argues she had another good reason for her noncompliance: the side-effects of the Clonidine prescribed for her hypertension would have made it impossible for her to work anyway because taking it "knocked her out." The regulations provide that a claimant must follow prescribed treatment if it can restore the ability to work. 20 C.F.R. § 404.1530(a). The record shows that in July 1999, Dr. Stringfellow noted Brown's complaints of dry mouth and drowsiness as side effects from the Clonidine, but remarked only that she would get accustomed to that. And although Dr. Stringfellow noted Brown's complaints in October 1999 that the Clonidine "knocked her out," and that if she could not tolerate it he would have to find a different medication for her, there is no evidence in the record that her medication was changed.

Substantial evidence supports the ALJ's conclusion that Brown was noncompliant with prescribed treatment for her hypertension without good reason, and therefore was not disabled. Thus, the ALJ was free not to give Dr. Stringfellow's contrary opinion controlling weight.

### 2. Subjective Complaints of Pain

Brown next argues that the ALJ improperly discounted her subjective complaints of pain. Symptoms such as pain are considered along with any impairments when determining a claimant's RFC. 20 C.F.R. § 404.1529(d)(4). "In

analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (stating factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). "'Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints.'" Id. (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). While there is no doubt the claimant experiences pain, the important question is how severe the pain is. Id. We will not find error where the ALJ considered, but discredits for good cause, a claimant's complaints of pain. Id. While "[a]n ALJ may not disregard a claimant's subjective pain allegations solely because they are not fully supported by the objective medical evidence," subjective complaints about pain "may be discounted if there are inconsistencies in the evidence as a whole." Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995).

The ALJ properly considered Brown's complaints of pain. In his opinion, he recognized his responsibility to do so before recounting Brown's testimony regarding her pain. The ALJ considered testimony by Brown that seemed inconsistent with limitations caused by the kind of pain Brown said she had, including that despite purported limitations on standing, lifting, and walking, she was still able to cook, do laundry, sweep and mop, attend church, and tend to her personal needs. She also testified that she acted as the primary caregiver of her daughter with cerebral palsy, helping her bathe and tending to her needs whenever the part-time assistant was not present. There was also evidence in the record that Brown performed yard work. In addition to the evidence of Brown's daily activities, the record shows the ALJ inquired during the hearing into evidence related to the other Polaski factors. He also considered the available medical evidence. Brown's neurosurgeon who performed a diskectomy in August 1995 stated that Brown could return to work by the following month with temporary lifting restrictions for that month, and no restrictions thereafter.

The record notes Brown's continuing failure to comply with prescribed treatments. For these reasons, the ALJ, while fully considering Brown's subjective complaints of pain, discounted them in light of other evidence in the record as a whole.

As a result, the ALJ's decision to discount both Dr. Stringfellow's opinion and Brown's subjective complaints of pain in the RFC analysis is supported by substantial evidence in the record as a whole. Consequently, the ALJ's determination that Brown retained the RFC for light work on and before December 31, 2000, is supported by substantial evidence.

## III.  CONCLUSION

Given the ALJ's conclusion regarding RFC, substantial evidence supports the finding that Annie Bell Brown was not disabled on or before December 31, 2000. Accordingly, we affirm the judgment of the district court.

_____