**Gramn L. SIMMONDS, Plaintiff,**

v.

**Carolyn W. COLVIN, Commissioner of Social Security, Defendant.**

**No. C12–3053–LTS.**

United States District Court, N.D. Iowa, Central Division.

July 19, 2013.

David A. Scott, Cornwall Avery Bjornstad Scott, Spencer, IA, for Plaintiff.

Stephanie Johnson Wright, U.S. Attorney's Office, Cedar Rapids, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEONARD T. STRAND, United States Magistrate Judge.

### Introduction

Plaintiff Gramn Simmonds seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Simmonds contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that

he is not disabled. For the reasons discussed below, the decision must be affirmed.

### Background

Simmonds was born in 1978 and has a GED. He has past relevant work as a bartender, cashier, CNA, factory worker, hydraulic tester, material handler and stocker. AR 389. Simmonds protectively filed for DIB and SSI on March 12, 2009, alleging disability beginning on June 15, 2006, due to bi-polar manic depressive disorder, Tourette's syndrome and anxiety disorder. AR 278, 283. His claims were denied initially and on reconsideration. AR 58–61. Simmonds requested a hearing before an Administrative Law Judge (ALJ). AR 79–80. On December 2, 2010, ALJ Robert Maxwell held a hearing via video conference during which Simmonds and a vocational expert (VE) testified. AR 19–57.

On December 22, 2010, the ALJ issued a decision finding Simmonds not disabled since June 15, 2006. AR 9–18. Simmonds sought review of this decision by the Appeals Council, which denied review on May 30, 2012. AR 1–3. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

On July 27, 2012, Simmonds filed a complaint in this court seeking review of the ALJ's decision. On October 18, 2012, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

### Summary of ALJ's Decision

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

(2) The claimant has engaged in substantial gainful activity (hereinafter SGA) during various timeframes since June 15, 2006, the alleged disability onset date, up to the date of this decision. Specifically he performed SGA from August 1, 2006, through October 14, 2006, and from September, not the first, 2008, through January 16, 2009, as discussed below (20 C.F.R. §§ 404.1571 et seq., and 416.971 et seq.).

(3) The claimant has the following severe impairments: a diagnosed bi-polar disorder, generally under adequate control with medications (Exhibits 1F, 2F, 6F, 11F'); an obsessive compulsive disorder, generally controlled with Klonopin and addressed with counseling (Exhibit 12F'); and a more recently diagnosed attention deficit hyperactivity[ ] disorder, primarily inattentive, treated with Vyvanse and then Adderall (Exhibits 6F, pages 3 and 4, and 1F) (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Exhibits 1A–4A). (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations. The claimant experiences moderate limitations in carrying out and maintaining concentration, persistence, and pace in

the performance of detailed tasks; moderate limitations in responding appropriately to instructions and criticisms from supervisors as well as changes in the work setting; moderate limitations in working around others and interacting with the public; and moderate limitations in completing a normal workday and workweek. Within this degree of limitation, the claimant retains the functional capacity to perform simple work with no need for special supervision. The claimant can do simple work with no need for special supervision. He would have no problem performing said work within a schedule and requiring attendance and punctuality. In sum, the claimant can perform simple, routine tasks on a regular and sustained full-time basis not requiring more than brief and superficial contacts with others. As such, the undersigned does fully agree with the conclusions of the state agency physicians as to the degree of functional limitation experienced by the claimant resulting from his mental impairments (Exhibits 3F, 4F, and 7F). (SSR 96–6p) Testimony of the claimant was not fully credible for reasons set forth below and above under Finding 2.

(6) The claimant is unable to perform any of his past relevant work (Exhibits 23D, 2E, 3E, 5E, pages 3 and 4, and 19E) (20 C.F.R. §§ 404.1565 and 416.965).

(7) The claimant was born on September 30, 1978, and was 27 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8) The claimant has obtained a general equivalency diploma and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional or national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2006, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

AR 11–18. The ALJ first analyzed Simmonds' past work at substantial gainful activity (SGA) levels. The ALJ found that his previous jobs with Pepsi, a furniture store and as a counselor at Forest Ridge were all performed at, or just below, SGA levels. AR 11–12. Although Simmonds stated his absences led to his firing at the furniture store and Forest Ridge, the ALJ noted the evidence suggested otherwise. The medical records indicate Simmonds reported that he had a personality conflict with a co-worker at the furniture store, which may have led to his termination there. AR 12. Similarly, his mother's third party function report indicated he was fired from Forest Ridge because management thought he was inappropriate to a

co-worker. *Id.* Moreover, Simmonds himself told his therapist that he lost his job at Forest Ridge due to something he said being taken out of context in addition to being late to work on several occasions. *Id.* (citing AR 443). The ALJ reasoned that because Simmonds was on his medication at that time, performed work for approximately four months before he was fired, and was apparently good at his job, it appeared that tardiness or absenteeism were not the primary reasons he was fired. *Id.*

The ALJ found that Simmonds' past work at SGA levels diminished the credibility of his assertions regarding the severity of his mental impairment. The ALJ noted that many of Simmonds' past jobs were semi-skilled in nature, required a fair ability to concentrate and maintain attention and supported the ALJ's RFC determination. *Id.*

In analyzing the severity of his medically determinable impairments, the ALJ found Simmonds' Tourette's syndrome was "not severe." AR 13. He also found that Simmonds' other impairments, considered singly and in combination, did not meet or medically equal a listing because his impairments caused only moderate limitations in the functional areas known as the "paragraph B" criteria.

In determining Simmonds' RFC, the ALJ summarized the evidence in the record, including Simmonds' testimony and his work history. AR 14–16. He noted there was no corroboration in the record from any of Simmonds' employers that he was terminated due to absenteeism. AR 16. In addition to the findings he made at Step Two, the ALJ noted that Simmonds' job detailing boats at a marina ended because he began the counseling job at Forest Ridge. Simmonds had also said he did not like the marina job because he felt like an old man working with a bunch of high school kids and did not know if he was going to be able to stay there long. The ALJ noted this work was not at SGA levels, but it demonstrated Simmonds could perform work with his mental impairment. The ALJ also remarked that Simmonds had lost his bartending job due to "not enough business" rather than absenteeism. *Id.*

The ALJ found Simmonds had demonstrated a willingness to work for many years, both before and after his alleged onset date. Although he claimed to have lost many of his jobs due to absenteeism, the record demonstrated otherwise and it appeared he performed several different semi-skilled jobs adequately. Most recently he was able to attend school on a full-time basis, maintain a "B" average, and work part-time at his parents' consignment store. *Id.*

The ALJ also noted that while Simmonds complained of sleepiness as a side effect of his medication, he repeatedly denied side effects when his doctor asked about them. *Id.* On February 17, 2010, he told his doctor that he was not trying to blame his tiredness on his medications and needed to drink a pot of coffee every morning to get going. His doctor refused to increase his Adderall prescription explaining it was meant to keep him alert in school, not keep him awake. *Id.* She also questioned his bipolar diagnosis because there was no evidence of a manic episode in the record. *Id.*

Finally, the ALJ noted that treatment notes from Simmonds' counseling sessions indicated the focus of the sessions had been to improve his self-confidence and self-esteem along with his dependency traits and lack of independence. *Id.* The ALJ found little reference in the notes that Simmonds experienced any significant problems with mania, depression, panic attacks or anxiety. *Id.*

The ALJ determined that Simmonds was unable to perform any of his past relevant work because it was primarily semi-skilled or skilled in nature. However, he also determined that Simmonds could perform other work available in significant numbers in the national economy, such as a garment/laundry bagger. AR 18. Therefore, he found that Simmonds was not disabled since June 15, 2006. *Id.*

### Disability Determinations and the Burden of Proof

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists ... in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir.2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir.2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby,* 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1–6), 416.921(b)(1–6); *see Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir.2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d);

*see Kelley v. Callahan,* 133 F.3d 583, 588 (8th Cir.1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir.2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain nonmedical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experi-ence. *See Bladow v. Apfel,* 205 F.3d 356, 358–59 n. 5 (8th Cir.2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir.2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir.2004).

### The Substantial Evidence Standard

■ The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart,* 433 F.3d 575, 577 (8th Cir.2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis,* 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart,* 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue,* 607 F.3d 533, 536 (8th Cir.2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart,* 349 F.3d 549, 555 (8th Cir.2003) (citing *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir.1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.,* 879 F.2d 441, 444 (8th Cir.1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin,* 349 F.3d at 555 (citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), or "review the factual record de novo." *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner,* 607 F.3d at 536 (quoting *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson,* 30 F.3d at 939 (quoting *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984); *see Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### *Discussion*

Simmonds makes two arguments in claiming the ALJ's decision is not supported by substantial evidence. First, he challenges the ALJ's credibility determination, specifically focusing on the ALJ's findings regarding his employment history and absenteeism. Second, he argues the ALJ erred by asking the VE to consider whether Simmonds could perform any of his past relevant work, both semi-skilled and unskilled, even though evidence suggested that Simmonds could only perform unskilled work. I will address each argument separately below.

### A. *Credibility Determination*

The ALJ discredited Simmonds' allegations concerning the severity of his impairments for several reasons. First, he noted that Simmonds had performed several jobs at or below the SGA level. AR 12. The jobs were at least semi-skilled in nature and required a fair ability to concentrate and maintain attention. *Id.* Second, although Simmonds claimed that he was terminated from most jobs due to tardiness and absenteeism, the record demonstrated there were other reasons his employment was terminated that did not relate to his mental impairments. Third, the ALJ found Simmonds had made inconsistent statements regarding the side effects of his medication. He claimed they made him sleepy, but he never mentioned this side effect or any other when asked by his doctor. Fourth, the ALJ found that Sim-

monds' ability to take college classes on a full-time basis, maintain a "B" average, and work part-time at his parents' consignment store was inconsistent with a disabling mental impairment. Finally, the ALJ noted that most of Simmonds' treatment was focused on improving self-confidence and self-esteem and addressing his dependency traits and lack of independence rather than significant problems with mania, depression, panic attacks or anxiety.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski,* 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel,* 224 F.3d 891, 895 (8th Cir.2000). The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff,* 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir.2000). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir.2005).

 I find that the ALJ's credibility determination is supported by substantial evidence in the record as a whole. Simmonds argues that his employment history suggests he is not capable of maintaining steady employment. While a good work history usually weighs in favor of a claimant's credibility, *see Nunn v. Heckler,* 732 F.2d 645, 648 (8th Cir.1984) ("a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"), continuing to work while alleging disability undermines that credibility. "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff,* 421 F.3d at 792 (citing *Naber,* 22 F.3d at 188–89). The regulations provide that someone who is able to engage in substantial gainful activity will not be considered disabled. *See* 20 C.F.R. §§ 404.1571, 416.971. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir.2009) (citing *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir.2001)).

The ALJ provided good reasons for finding that Simmonds' employment history made him less credible, which are supported by substantial evidence in the record. Simmonds was able to perform work-related tasks in a variety of jobs and generate earnings at, or just below, SGA levels in three of those jobs. Although he frequently changed jobs and was often tardy or absent, the record demonstrates that Simmonds was terminated from or otherwise changed jobs for reasons unrelated to his impairment. To the extent those reasons could be attributed to his impairment, the ALJ has adopted appropriate limitations in the RFC—such as no more than brief, superficial contact with others—to account for those difficulties Simmonds may have had in past jobs. Simmonds was also able to attend college classes on a full-time basis, maintain a "B" average and work part-time at his parents' store. The ALJ's reasons for finding that Simmonds' employment history diminished his credi-

bility are supported by substantial evidence in the record.

Simmonds also argues that because the state agency psychological consultant found Simmonds to be credible, the ALJ should have given more weight to the VE's response to the hypothetical that contained Simmonds' limitations as he alleged them. The Commissioner correctly points out that the claimant's credibility is determined by the ALJ, not the state agency psychological consultant. *See Casey v. Astrue,* 503 F.3d 687, 696 (8th Cir.2007) ("The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about her limitations."). Although the ALJ must consider the state agency consultants' findings, he is not bound by them. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

Finally, Simmonds argues that his treatment record "fully substantiates [his] testimony that he would have to miss 10 to 15 days of work per month due to his mental illness." For support, he lists all the dates he has been to treatment and therapy. These dates demonstrate that Simmonds has had appointments three times per month, at most, and that they are usually scheduled once per month. He was also employed during most of these dates and taking medication for his mental impairment. The ALJ noted that Simmonds has consistently denied side effects of his medication when asked by his doctors, but now claims sleepiness as a side effect that leads to absences and tardiness. The ALJ also noted Simmonds' counseling has been focused on improving self-confidence and self-esteem with little evidence of addressing significant problems with mania, depression, panic attacks or anxiety.

The ALJ properly discredited Simmonds' assertion that his mental impairment would cause him to miss 10 to 15 days of work each month. The record does not suggest he would miss nearly that many days due to treatment and there is no evidence suggesting his mental impairment has been the cause of past absenteeism or tardiness. Indeed, the record shows Simmonds maintained several jobs despite his impairment and that those jobs ended for reasons other than tardiness or absenteeism. The ALJ provided good reasons for discrediting Simmonds' subjective allegations, which are supported by substantial evidence in the record as a whole. Therefore, I must defer to the ALJ's credibility determination. *Guilliams,* 393 F.3d at 801.

### B. VE's Testimony

Simmonds argues that the ALJ's second hypothetical question and the VE's response were not supported by substantial evidence. This hypothetical was composed of limitations the state agency psychological consultant identified in the mental RFC assessment. Simmonds argues the ALJ erred by asking the VE if Simmonds could perform any of his past relevant work at either the semi-skilled or unskilled level within these limitations. Simmonds contends this question was error because a Disability Examiner had previously found that Simmonds was limited to only unskilled work and unable to return to any of his past work. AR 292. In response to the ALJ's hypothetical, the VE stated that Simmonds' past work as a stocker and material handler would be appropriate, both of which were semi-skilled jobs. AR 389. Simmonds argues the ALJ's hypothetical question and the VE's testimony were unsupported by substantial evidence in the record, given the Disability Examiner's previous finding. However, he also argues the ALJ erred by disregarding the VE's testimony because the ALJ ultimately concluded that Simmonds could not perform any of his past relevant work.

The Commissioner argues that step four of the sequential evaluation process requires the ALJ to make a finding as to whether the claimant retains the ability to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f), 416.920(a)(4)(iv) and (f). She also points out that the regulations allow an ALJ to use a VE's testimony to help with this decision. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). She argues that even if I found the ALJ's hypothetical question and the VE's testimony were not supported by substantial evidence, the error should be considered harmless because the ALJ ultimately concluded Simmonds could not perform his past relevant work and did not rely on that part of the VE's testimony in determining Simmonds was not disabled.

■■■■ "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir.2004). It must include all of the claimant's impairments supported by substantial evidence in the record as a whole. *Id.* "If a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir.1998).

In his decision, the ALJ found that Simmonds could not perform his past relevant work. AR 16. He noted that the only unskilled work Simmonds had performed was as a cashier and it did not amount to SGA levels. Therefore, it was not considered past relevant work. AR 17. He also noted that the rest of Simmonds' past work was considered semi-skilled or skilled, and Simmonds' current RFC did not allow him to perform work at this level. Therefore, he went on to evaluate whether Simmonds could perform other work available in the national economy.

■■■■ I find that the ALJ did not err by (a) asking the VE to consider whether the limitations provided in the second hypothetical allowed Simmonds to perform his past relevant work at the semi-skilled or unskilled level or (b) disregarding the VE's testimony that Simmonds' past relevant work would be appropriate within those limitations. Simmonds' arguments are somewhat contradictory. He argues the ALJ should not have asked the VE whether Simmonds could perform semi-skilled past relevant work, while at the same time arguing the ALJ should not have disregarded the VE's affirmative response to that question.

In his decision, the ALJ adopted the limitations outlined in the second hypothetical and translated those limitations into an RFC that allowed Simmonds to perform simple, routine work or unskilled work. AR 14. By doing this, the ALJ characterized the limitations of the second hypothetical as *more limiting* than the VE did. Based on his characterization of the RFC, the ALJ correctly disregarded the VE's testimony that Simmonds could perform past relevant semi-skilled work. Even though the ALJ did not accept this part of the VE's testimony, it was not error for him to present this hypothetical to the VE because the limitations he provided were supported by substantial evidence in the record and the regulations require the ALJ to determine whether the claimant can perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f), 416.920(a)(4)(iv) and (f).

Simmonds also argues that the ALJ erred by not specifying whether the "other work" Simmonds could perform was sedentary, light, medium, heavy, or very heavy, and skilled or unskilled. The Commissioner correctly notes that the ALJ

expressly stated in the RFC finding that Simmonds had the RFC to perform "a full range of work at all exertional levels." Therefore, it is irrelevant whether the other work identified was sedentary, light, medium, heavy or very heavy. The ALJ also specified that the work of a garment/laundry bagger, as identified by the VE, was an SVP[1] of 1. Although he did not note in his decision that this work was unskilled, the VE testified that it was. This is sufficient to find that the ALJ's decision is supported by substantial evidence in the record as a whole.

The ALJ did not err at step four or five in obtaining VE testimony to determine if Simmonds could perform past relevant work or other work available in significant numbers in the national economy. He used a hypothetical that identified all of Simmonds' credible limitations that were supported by substantial evidence in the record. The ALJ properly disregarded the VE's testimony that Simmonds was capable of performing his past relevant semi-skilled work because the ALJ found Simmonds retained the RFC to perform only unskilled work. He accurately concluded that Simmonds could not perform his past relevant work because his only past unskilled job did not amount to SGA and his other past jobs were semi-skilled or skilled. He then went on to step five of the evaluation and relied on the VE's testimony that Simmonds could perform other work as a garment/laundry bagger within the identified limitations, which was unskilled. This led to his finding that Simmonds was not disabled. This analysis and conclusion are supported by substantial evidence in the record as a whole.

### Conclusion

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Simmonds was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ must be **affirmed** and judgment will be entered in favor of the Commissioner and against Simmonds.

**IT IS SO ORDERED.**

---

1. "SVP" refers to Specific Vocational Preparation, which is defined in Appendix C of the *Dictionary of Occupational Titles* as being "the amount of lapsed time required by a typical worker to learn the techniques, ac-quire the information, and develop the facility needed for average performance in a specific job-worker situation." An SVP of 1 equates to a short demonstration only. *See Dictionary of Occupational Titles,* Appendix C.