# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3423

_____

Linda A. Lawson

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: September 21, 2015
Filed: December 8, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Linda Lawson (Lawson) appeals the district court's[1] order affirming the decision of the Administrative Law Judge (ALJ) to deny Lawson's applications for disability insurance benefits and supplemental security income. On appeal, Lawson

---

[1] The Honorable Beth Phillips, United States District Court Judge for the Western District of Missouri.

contends the ALJ failed to properly weigh certain medical opinions in the record. We disagree and therefore affirm.

## I. Factual and Procedural Background

On April 27, 2009, Lawson filed her applications for disability insurance benefits under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act (the Act). She alleges she became disabled on April 13, 2009. In her disability report, Lawson claimed to be disabled due to bipolar disorder, premenstrual tension syndrome, impulse control disorder, generalized anxiety disorder, social phobia, obsessive-compulsive disorder, post traumatic stress disorder, borderline personality disorder, dependent personality disorder, and asthma. Following the denial of her applications for disability insurance benefits and SSI, Lawson requested an administrative hearing before an ALJ. On December 15, 2010, a hearing was held, and a supplemental hearing took place on March 31, 2011.

On April 29, 2011, the ALJ issued a ruling finding Lawson was not disabled and denied her benefits. In reaching that decision, the ALJ reasoned that, although Lawson has the "severe" mental impairment of a personality disorder, she is not mentally disabled. The ALJ concluded Lawson was not credible based on her work history and activities of daily living. In considering Lawson's alleged mental impairment, the ALJ accorded great weight to the testimony of Dr. Alfred Jonas. Dr. Jonas, a board-certified specialist in psychiatry, was a non-examining psychiatrist in this case. Dr. Jonas reviewed Lawson's entire medical record and testified at the ALJ's supplemental hearing. The ALJ concluded that Dr. Jonas's testimony was "supported by the medical evidence as a whole and his testimony is therefore reasonable and unimpeached." The ALJ gave little weight to the opinion of Lawson's treating psychiatrist, Dr. Henry O. Wisdom and the opinions of "other" medical sources, such as nurse practitioner Mr. Mark Hensley and licensed professional counselors Mr. Gordon Leach and Mr. Roy Neal Lovell. After analyzing the record,

the ALJ found Lawson could not perform her past relevant work as a certified nurse's aide. However, the ALJ found that Lawson retained the residual functional capacity (RFC) to perform other work if a job involved limited or no interaction with the general public and superficial contact with co-workers and supervisors.

Lawson filed a request for review of the ALJ's decision by the Social Security Administration Appeals Council. On August 30, 2012, the Appeals Council denied Lawson's request for additional review. Therefore, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the Commissioner). Lawson sought review in the district court. On August 18, 2014, the district court affirmed, finding the Commissioner's decision was supported by substantial evidence on the record as a whole.

On appeal, Lawson alleges disability based on bipolar disorder type II, depression, and borderline personality traits. Lawson alleges no physical complaints. Lawson contends the ALJ committed two errors: the ALJ (1) failed to properly weigh the opinions of her treating psychiatrist, Dr. Wisdom, and (2) improperly weighed other opinions in the record. We address each contention in turn below.

## II. Discussion

This Court reviews de novo a district court's decision to affirm an ALJ's denial of social security disability insurance benefits and SSI. See Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006); see also Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). If substantial evidence in the record as a whole supports the ALJ's decision, then this Court will affirm the denial of benefits. Milam, 794 F.3d at 983. "Substantial evidence is 'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" Id. (alteration in original) (quoting Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010)). This Court will look at evidence that both supports and undermines the Commissioner's decision in

deciding whether existing evidence is substantial.  See Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000).

## A. Dr. Wisdom's Opinion

On appeal, Lawson first contends that the ALJ erred in finding she was not disabled because the ALJ "failed to discuss, review or give any weight to the actual opinions" of her primary treating psychiatrist, Dr. Wisdom. The government counters that there are only seven treatment notes from Dr. Wisdom in the record, and those seven notes describe fifteen-minute appointments that were focused on adjusting Lawson's medications.[2]  Dr. Wisdom also did not provide any opinion, the government argues, as to Lawson's prognosis or limitations.

After our review of the record and the parties' briefs, we conclude the ALJ did not err in discussing, reviewing, or giving less weight to Dr. Wisdom's opinion.  As this Court has explained elsewhere, "An ALJ may discount or disregard a treating physician's opinion 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)) (internal quotation marks omitted).  In addition, "[a]n ALJ may give less weight to a conclusory or inconsistent opinion by a treating physician." Id.  "In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations." Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007).

---

[2] We reviewed Dr. Wisdom's seven treatment notes dated May 20, 2010; July 8, 2010; September 2, 2010; October 14, 2010; November 11, 2010; December 16, 2010; and February 17, 2011.  The first appointment was for thirty minutes and the rest of the appointments were for fifteen minutes.

In this case, the ALJ referenced and then gave little weight to Dr. Wisdom's testimony for good reasons. The ALJ noted that Dr. Wisdom assigned a low GAF score, which was inconsistent with the totality of the medical evidence and not supported by Lawson's demonstrated level of functioning.[3] See also Jones, 619 F.3d at 973 ("The [Global Assessment Functioning] score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.") (alteration in original) (internal quotation marks and citations omitted)).

Dr. Wisdom saw Lawson seven times between May 20, 2010 and February 17, 2011. Dr. Wisdom's evaluation indicates Lawson was doing "fairly well" in November 2010. Contrary to Lawson's assertions, the ALJ also recognized that Dr. Wisdom noted Lawson "appears to be doing quite well" and found "[n]o problems with her medications" at their last meeting in February 2011. The ALJ also mentioned Dr. Wisdom's assertion in February 2011 that "[s]ince [Lawson's] dismissal from the hospital, [she] had done 'very well.'" At the same appointment, Dr. Wisdom saw "no reason for making any changes," and he stated his belief that Lawson's medications were "working well." Overall, Dr. Wisdom's progress notes in the record reflect that Lawson met with Dr. Wisdom for six fifteen-minute appointments and one thirty-minute appointment to adjust her medications. The notes also indicate her mental conditions improved with the proper medications. See

---

[3] Lawson argues Dr. Wisdom did not assign any GAF score. The government counters that Lawson's counsel represented at the ALJ's supplemental hearing that Dr. Wisdom assigned Lawson a GAF score of approximately 38. The government concedes that it appears Dr. Wisdom never assigned a GAF score in his treatment notes. However, because the Master Treatment Plan, which includes a GAF score of 38, lists Dr. Wisdom as Lawson's provider, the government argues it is unclear whether Dr. Wisdom or Mr. Leach assigned that GAF score. Putting the parties' disagreements aside, even if the ALJ wrongly attributed a GAF score to Dr. Wisdom, such a GAF score is inconsistent with the evidence in the record and conflicts with Dr. Wisdom's treatment notes as discussed above.

Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004))). Thus, Dr. Wisdom's opinions do not support a finding of disability.

Assuming, for the sake of argument, Dr. Wisdom gave a low GAF assessment for Lawson, the ALJ did not err in giving less weight to Dr. Wisdom's assessment. As the ALJ rightly noted, a low GAF score is inconsistent with the totality of the medical evidence and not supported by Lawson's demonstrated level of functioning. Regarding Lawson's medical record, as the ALJ explained, Dr. Jonas opined that Lawson had no impairment in her daily living and her subjective complaints of a mental impairment did not reflect her actual functional abilities. Nor does Lawson have any limitations in concentration, persistence, or pace, according to Dr. Jonas. When Dr. Jonas was asked about Lawson's low GAF scores, he responded he "did not give much credence to GAF scores, because, based on his medical experience, they were unreliable."

In addition, Mr. John Keough, a licensed psychologist, performed a consultative psychological examination of Lawson on August 26, 2009. Lawson told Mr. Keough that her general attitude was "good" while she was on her medications. Mr. Keough also reported that Lawson "had no difficulty interacting" with him and she "was overemphasizing" her symptoms. See Jones, 619 F.3d at 973 ("The ALJ was entitled to draw conclusions about [the claimant's] credibility based on [the psychiatrist's observation] indicating that [the claimant] was exaggerating symptoms . . ." (quoting Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006))). "[Lawson's] ability to sustain concentration, be persistent in tasks and maintain an adequate pace in productive activity, necessary to be gainfully employed, working 40 hours a week, in a mainstream work-related environment, for a duration of at least 12 months, with regard to psychological issues," Mr. Keough wrote, "would be adequate up to a complex or demanding setting."

The ALJ also considered Lawson's daily activities as a stay-at-home mother. For example, Lawson testified to "perform[ing] household chores, including cleaning and laundry" and "watching television and writing her thoughts in a daily journal." Lawson also reported no problems taking care of her personal needs, such as bathing, grooming, dressing, etc., and she drives, shops for groceries, walks a lot, fishes and camps with her family, and cares for her two children, one of whom has mild cerebral palsy, "all the time." See Brown, 390 F.3d at 541 (finding the ALJ permissibly discounted appellant's subjective complaints of disabling pain, which were inconsistent with her testimony that she "acted as the primary caregiver of her daughter with cerebral palsy."). There is evidence in the record that Lawson cooked, helped mow her yard, washed dishes, vacuumed, and wiped tables and counters. The record indicates that Lawson is able to manage her finances. Lawson reported her social activities consist of visiting with others "maybe once a week." In sum, the ALJ did not err by giving less weight to a low GAF rating for Lawson, which is not supported by Lawson's daily activities and inconsistent with her medical record.

## B. Other Medical Opinions

Lawson next argues that the ALJ erred in not "properly address[ing], review[ing] or giv[ing] any weight" to other sources' opinions in the record regarding Lawson's mental impairments and functional abilities. Lawson points to opinions from Mr. Mark Hensley, Mr. Gordon Leach, and Mr. Roy Neal Lovell. If the ALJ had properly reviewed the opinions of Mr. Hensley, Mr. Leach, or Mr. Lovell, Lawson argues, then the ALJ would have found those opinions consistent with her medical record and the testimony of Lawson and her husband.

The government disagrees, contending the ALJ properly evaluated Mr. Leach's opinion and gave it little weight. This is because, in part, Mr. Leach is not an "acceptable medical source" and his opinion conflicted with Lawson's demonstrated

abilities and the medical record, which indicates Lawson's condition improves with medication. Like Mr. Leach, neither Mr. Hensley nor Mr. Lovell are "acceptable medical sources." The government also argues that Mr. Hensley and Mr. Lovell did not provide opinions as to Lawson's specific limitations. According to the government, the ALJ considered records from both Mr. Hensley and Mr. Lovell, even if the ALJ did not reference Mr. Lovell by name.

"Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*. It then divides *other sources* into two main groups: *medical sources* and *non-medical sources*." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 416.902)). Nurse practitioners and therapists "are specifically listed as 'other' medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairments on the claimant's ability to work." Lacroix, 465 F.3d at 887 (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)). Evidence provided by "other sources" must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record. See id. at 886–87; see also Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.") (citation omitted)).

With the above directives in mind, we conclude the ALJ properly explained her reasons for giving little weight to the "other" medical sources, i.e., Mr. Hensley, Mr. Leach, and Mr. Lovell. Mr. Leach, a licensed professional counselor, was Lawson's therapist in conjunction with her treating psychiatrist, Dr. Wisdom. Mr. Leach saw Lawson eleven times between October 18, 2010 and February 11, 2011. Mr. Hensley, a nurse practitioner, was Lawson's therapist between June 9, 2009[4] and March 29,

---

[4] The psychiatric intake evaluation is dated 09/06/09. However, the dictation date is 06/10/09, and thus, the government is correct in presuming that the intake evaluation was performed on 06/09/09, not 09/06/09.

2010. Mr. Hensley saw Lawson seven times. Mr. Lovell, a licensed professional counselor, saw Lawson for a diagnostic evaluation on April 22, 2010.[5] As the ALJ properly found, nurse practitioners and therapists are not considered "acceptable medical sources" under the regulations. See 20 C.F.R. §§ 404.1513(a), (d)(1) (excluding nurse practitioners and therapists from the list of acceptable medical sources). Furthermore, the ALJ did not err in finding the totality of the medical evidence and Lawson's demonstrated level of functioning were inconsistent with these "other" medical sources' opinions.

## III. Disposition

In closing, the ALJ's determination that Lawson is not disabled under the Act is supported by substantial evidence on the record as a whole. Accordingly, we affirm the ALJ's decision.

_____

---

[5] Although the ALJ did not specifically reference Mr. Lovell by name, the ALJ refers to Mr. Lovell's initial intake evaluation three times in its decision and discredits Mr. Lovell's opinion.