# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4103

_____

Charles Bryant

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: April 6, 2017
Filed: June 29, 2017

_____

Before SMITH, Chief Judge, SHEPHERD, Circuit Judge, and FENNER,[1] District
Judge.

_____

SHEPHERD, Circuit Judge.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western
District of Missouri, sitting by designation.

Charles Bryant appeals the decision of the district court[2] affirming the decision of the Commissioner to uphold the Administrative Law Judge's (ALJ) denial of his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Bryant applied for DIB and SSI benefits alleging a disability onset of May 25, 2012, due to a left leg injury, rheumatoid arthritis, and gout. The ALJ denied his application.

Chronologically, Bryant's left leg history is as follows. On May 25, 2012, Bryant, at 61 years of age, was involved in a motorcycle accident resulting in a severely comminuted, closed, left tibia/fibula fracture for which he underwent immediate intramedullary nailing without complications. Bryant was released by his orthopaedic surgeon, Dr. Roy E. Cooper, to "resume full work activities" on February 12, 2013—almost nine months after the left leg surgery. At that time, Bryant reported that he was getting better, but complained that he still had some swelling in the leg. Bryant went back to work for one and one-half months, but according to Bryant, he "had to retire because [his] leg was swelling up too much and [he] could hardly walk." He did not seek medical attention to address these complaints or try to find another job. So, in May 2013, Bryant retired at the age of 62.

After retirement, Bryant lost his health insurance and waited several months for Medicare to start before seeking further treatment of his left leg. In January 2014, Dr. Cooper said that the x-rays of his tibia/fibula fracture showed "complete fracture

---

[2]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas.

union with excellent appearance of the hardware." The cross-locking screws were removed from his tibial nail in May 2014 because they were causing him some discomfort in the area of the screw heads. The following month, Bryant's primary doctor, Dr. Michael Tedder, described his gait and range of motion as within normal limits while also noting "normal flexibility" and a "normal straight leg raise." On July 28, 2014, Bryant reported that he was "very happy and . . . is walking better and doing better." Dr. Cooper again released him to "normal activities" at that time.

For twenty years, Bryant had a history of gout attacks which were treated intermittently with allopurinol and decadron. His good work history indicates that these gout attacks did not cause him to miss work generally. Some of these attacks occurred while he was recovering from the motorcycle accident. One such attack involved his left ankle and was treated by Dr. Tedder by restarting the allopurinol and decadron on October 19, 2012; no work restrictions were placed on him by Dr. Tedder. Another gout attack affecting his ankles and left great toe was treated by Dr. Tedder in January 2013 with the same medications and without any work restrictions mentioned.

Bryant has a maternal history of rheumatoid arthritis, but evidence is lacking that he has the disorder. His rheumatoid factor was negative on October 19, 2012, and the doctor did not include rheumatoid arthritis as a diagnosis in the subsequent visits. Bryant later claimed the classification as "rheumatoid" was a "layman's misunderstanding," and pointed to x-rays in December 2011 showing some degenerative changes in his right knee and a CT scan in May 2012 showing some degenerative changes in his neck. However, the record does not indicate that the doctors considered these issues disabling, or that they were even actively being treated at all.

Bryant had other complaints which were considered, along with the ones listed on his application. For example, he was treated for cataracts and diabetes mellitus type II.

After reviewing the record and after conducting a hearing (on February 19, 2014) including testimony by Bryant and a vocational expert cross-examined by Bryant's counsel, the ALJ determined that Bryant "is not disabled under . . . the Social Security Act," and therefore, DIB and SSI benefits were denied.

The parties consented in writing to the jurisdiction of a United States Magistrate Judge. The Magistrate Judge affirmed the ALJ's decision, finding "substantial evidence" to support the conclusion that Bryant was not disabled within the meaning of the Social Security Act.

## II. Analysis

Bryant challenges whether there is substantial evidence in the record as a whole to support the ALJ's determination that his residual functional capacity (RFC) is "medium work." We review de novo the district court's decision to affirm the ALJ's denial of social security DIB and SSI. Lawson v. Colvin, 807 F.3d 962, 964 (8th Cir. 2015). "If *substantial evidence* in the record as a whole supports the ALJ's decision, then this Court will affirm the denial of benefits." Id. (emphasis added). "Substantial evidence is less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." Id. (internal quotation marks omitted).

Here, the ALJ properly analyzed Bryant's disability claims under the five-step evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).[3]  During the analysis, the ALJ found that Bryant had not performed any substantial gainful activity (SGA) since the motorcycle accident on May 25, 2012, and that Bryant had severe impairments related to his fractured leg, gout, and diabetes—but none that equaled an impairment listed in Appendix I. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  To address the remaining steps regarding Bryant's ability to perform past relevant or other work, the ALJ assessed Bryant's RFC and determined that he could perform the full range of "medium work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

*Credibility Assessment*

Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints.  Using the Polaski factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); see also Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (noting Polaski factors must be considered before discounting subjective complaints).  In addition to the claimant's prior work record, the Polaski factors include (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322; see also 20 C.F.R. § 404.1529.

In assessing Bryant's subjective complaints, the ALJ clearly considered the Polaski factors and substantial evidence supports her determination that "[Bryant's] statements concerning the intensity, persistence and limiting effects of [his]

---

[3]The steps are: (1) Is the claimant currently performing substantial gainful activity (SGA)? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix I? (4) Does the impairment prevent the claimant from performing past relevant work? (5) Does the impairment prevent the claimant from doing any other work?

symptoms are not entirely credible." The adjudicator is "not required to discuss each Polaski factor as long as '[she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009)).

Here, the ALJ used numerous facts to assess Bryant's credibility. First, the ALJ considered Bryant's work history, noting that "[Bryant] has a very good work history" supporting his credibility, but also observing that Bryant's "gout flares did not prevent him from working over the years, as evidenced by his good work history." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994) (noting "that [a] condition that was not disabling during working years and has not worsened cannot be used to prove present disability" (citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990))).

Second, the ALJ considered inconsistencies between Bryant's complaints, personal history, and the medical record. For example, the ALJ considered his daily activities including the facts that he lives alone, independently takes care of his personal needs, drives automobiles, shops, prepares meals, does his laundry, and occasionally attends church, among other activities. See, e.g., Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) (noting that "playing cards, watching television, shopping, performing occasional housework, and driving children and wife [had been] held inconsistent with disabling pain" (citing Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999))).

Another inconsistency considered by the ALJ concerned the circumstances surrounding Bryant's retirement. Bryant was released by Cooper to "resume full work activities" in February 2013, but he "retired" after only one and one-half months claiming "my leg was swelling up too much and I could hardly walk"; yet, there is no evidence that he complained to Dr. Cooper or Dr. Tedder during this one and one-half month period before unilaterally deciding to retire. Further, in spite of the release to full work, the ALJ found "no evidence that [Bryant] attempted to find other work."

Nor does the record reveal a single doctor's visit to re-assess his work status. Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (finding that the ALJ "properly considered [claimant's] relative lack of medical care, including his failure to seek care from 'charity' providers, as relevant, considering [claimant's] allegations of 'unbearable . . . pain"); see also Ellis v. Barnhart, 384 F. Supp. 2d 1195, 1203 (N.D. Ill. 2005) (noting "[a]n ALJ can consider evidence of non-compliance with medical advice when assessing credibility").

A final example of inconsistencies involves Bryant's alleged rheumatoid arthritis. Bryant claims that he is disabled due to rheumatoid arthritis, or alternatively, due to osteoarthritis, but the record does not support a disability from either. The medical record reveals that Bryant only has a maternal history of rheumatoid arthritis, but no personal history. He points to some findings of osteoarthritis on x-rays and on a CT scan in radiology reports although none of the treating doctors appear to express any concern to the conditions in assessing Bryant or his work status. Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003) (supporting the ALJ's discounting of subjective pain complaints as not credible when the record as a whole, including medical record, did not support the complaints); Vester v. Barnhart, 416 F.3d 886, 889 (8th Cir. 2005) (stating "we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence").

*RFC Assessment*

Considering all of Bryant's symptoms, and the extent these symptoms were consistent with objective medical evidence, the ALJ found that "[Bryant] has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c)."

Substantial evidence supports the ALJ's RFC determination that Bryant is able to perform medium work. First, the ALJ fully considered Bryant's present condition acknowledging that Bryant is a "63-year old individual with the equivalent of a high school education . . . [and] past relevant work as a general laborer/warehouse worker" and considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence."

Second, the ALJ confirmed that Bryant had a "severe" injury, but that the injury appears to have completely healed as evidenced by a full work release from Dr. Cooper and by Dr. Cooper's x-ray findings of "complete fracture union with excellent appearance of the hardware" in January 2014 (prior to the February 2014 hearing).

Third, the ALJ rightfully noted the lack of any medical provider making allowances for any disability in Bryant's care. For example, the ALJ states, "[t]here is no evidence of any health care provider restricting [Bryant] from all work activity." The ALJ also reported that "[n]one of the claimant's treating physicians . . . offered an opinion that [Bryant] is disabled or made any . . . recommendation that the claimant is unable to work at an SGA level." In fact, Dr. Tedder described Bryant as having a gait and range of motion "within normal limits" with "normal flexibility" and described him as "very happy." Further, Bryant had a long history of working with gout, and Dr. Tedder never placed any work restrictions upon Bryant during his gout attacks. Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (noting that a "lack of significant medical restrictions [is] inconsistent with . . . complaints of disabling pain" (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993))).

Fourth, the ALJ noted that if Bryant maintained proper medical treatment, there was no evidence that his medical issues (including his left leg, cataracts, gout, arthritis, and diabetes) could not be controlled adequately to allow him to resume medium work. Instead, Bryant retired in May 2013 without seeking medical assistance or advice, and there is no evidence that he sought other work thereafter.

Barnes v. Soc. Sec. Admin., 171 F.3d 1181, 1183 (8th Cir. 1999) (per curiam) (concluding that substantial evidence supported the ALJ's decision where there was "no medical evidence indicating that the [chronic condition] ha[d] deteriorated since . . . when he was able to work . . . using [accommodations]").

Finally, the ALJ's finding that Bryant can resume his job is supported by the vocational expert's testimony. At the February 2014 hearing, the vocational expert testified that a hypothetical person over 60 years old with a GED who can perform medium work can perform Bryant's past work as an unskilled warehouse worker with a medium exertional level. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (holding that a vocational expert's answer to a hypothetical question that includes the claimant's limitations determined by the ALJ "constitute[s] substantial evidence supporting the Commissioner's denial of benefits" (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006))).

## III. Conclusion

The RFC and credibility determinations of the ALJ are well supported by substantial evidence including Bryant's medical records, his statements at the hearing, the findings of the vocational expert, and the record as a whole. The ALJ examined the record as a whole and properly considered the doctors' findings that the left leg fracture was completely healed, the doctors' lack of restrictions placed on the claimant upon return to work, the claimant's ability to live independently and perform activities of daily living, the claimant's decision to retire without further medical advice, the claimant's limitations or lack thereof, and many other factors in reaching this determination. The ALJ's decision is supported by substantial evidence.

Affirmed.

_____