# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2168

_____

Rhonda Gann

*Plaintiff - Appellant*

v.

Nancy A. Berryhill, Acting Commissioner of the Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: February 8, 2017
Filed: July 28, 2017

_____

Before SMITH,[1] BENTON and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Rhonda Gann appeals the decision of the district court affirming the decision of the Commissioner denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act.  42 U.S.C.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

§ 401 et seq.; 42 U.S.C. § 1381 et seq.  Having jurisdiction under 28 U.S.C. § 1291 and finding substantial evidence lacking to support the ALJ's denial, we reverse and remand for proceedings consistent with this opinion.

## I.  Background

Gann applied for DIB and SSI benefits alleging a disability onset of July 12, 2011, due to "degenerative disc disease, arthritis, eye problems, neck injury, migraines, and sinus problems."  After reviewing the record and conducting a hearing including testimony by Gann and a vocational expert, the ALJ determined that Gann "is not disabled under . . . the Social Security Act," and therefore, DIB and SSI benefits were denied.  The Appeals Council denied Gann's request for review.  Gann sought review of the Commissioner's decision in the United States District Court for the Western District of Missouri which subsequently entered a final judgment affirming the decision of the Commissioner.  This appeal followed.

Gann has a long history of multiple health problems to which she attributes her alleged disability.  First, she has at least two psychiatric issues—"major depressive disorder, recurrent, severe without psychotic features" and post-traumatic stress disorder (PTSD).  Documentation supporting these diagnoses includes notations in the medical record from medical doctors (MD), psychologists (Psy.D.), nurse practitioners (NP), and qualified mental health professionals (QMHP).  During her medical visits seeking treatment for her psychiatric disorders, she has complained of crying spells, anxiety, nervousness, suicidal ideation, anger, and insomnia.  Her medical providers have prescribed multiple psychiatric medications during the course of her care including Celexa, trazadone, mirtazepine, Cymbalta, and doxepin.

Second, Gann has complained of low-back pain since before a lumbar spine fusion surgery performed in 2001.  She continued to have pain after the back surgery, which one of her doctors described as "all too common of a result."  Multiple health

professionals have treated her back pain, including several MDs, NPs, and physical therapists. To treat her back pain, the professionals have (1) prescribed narcotic pain medications (including Vicodin and Lortab), (2) ordered diagnostic tests (including an MRI), (3) performed invasive treatments (including facet joint injections), (4) prescribed assistive devices to help with her gait (including canes and wheelchairs), and (5) prescribed "in-home services" to help with her activities of daily living. Her lumbar spine MRI revealed "facet spondylosis and hypertrophy . . . coincid[ing] with the area of pain she indicates." A pain management doctor who performed facet injections for her back pain diagnosed her with "facet syndrome lumbar" and "post laminectomy syndrome." One provider recommended that she stand for no more than "five minutes at a time, sit for [no more than] 30 minutes at a time, lift no weight," and "never bend, stoop or perform fine manipulation."

Third, Gann has a plethora of other medical issues which she alleges contribute to her disability including migraine headaches, severe insomnia, obesity, restless leg syndrome (RLS), knee arthritis, and dizziness with frequent falling. She has reported migraine headaches occurring up to seven times per week and lasting around six hours per episode; her migraines were treated with prescriptions for Topamax and Imitrex. Professionals have prescribed Ambien to treat her insomnia. She is 5'3," 235 to 250 pounds, and has been described as morbidly obese. Her RLS is treated with prescription Requip. Both of her knees have been injected with steroids to treat the arthritis. Her dizziness and falls have been attributed to inner ear problems (chronic otitis media) and treated with prescriptions for physical therapy and medications. She has complained of neck pain at times, and she has a history of alcohol abuse. Global Assessment of Functioning (GAF) scores of 50 and 30 have been assigned to her by health professionals at various times during her care.

As a result of her health issues, at least two doctors expressed concerns regarding Gann's ability to adapt to a work environment. Dr. C. William Breckenridge, Psy.D., said: "Her ability to adapt to a work environment appears to

be *highly marginal* at this time." (emphasis added).  Similarly, Dr. Raphael Smith, Psy.D., noted "adaptive limitations" and an "ability to respond appropriately to changes in the work setting" that is "moderately limited."  Smith noted that Gann cannot work in a setting that "require[s] frequent or intense . . . change in routine."

Gann contends on appeal that the ALJ's residual functional capacity assessment and the hypothetical question posed to the vocational expert did not include all of her limitations.

## II.  Analysis

We review de novo the district court's decision to affirm the ALJ's denial of social security DIB and SSI.  Lawson v. Colvin, 807 F.3d 962, 964 (8th Cir. 2015).  "By statute, '[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.'"  Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) (quoting 42 U.S.C. § 405(g)).  "If *substantial evidence* in the record as a whole supports the ALJ's decision, then this Court will affirm the denial of benefits."  Lawson, 807 F.3d at 964 (emphasis added).  "Substantial evidence is less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."  Id. (alteration in original) (internal quotation marks omitted).  Our review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision."  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotation marks omitted).  However, "[w]e may not reverse the Commissioner's decision merely upon a finding that we would have reached a contrary conclusion."  Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005).  Indeed, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits."  Id. (internal quotation marks omitted).

Here, the ALJ followed the five-step process outlined in the regulations to determine whether Gann was disabled. See Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] First, the ALJ found that Gann had not "engaged in substantial gainful activity since July 12, 2011, the alleged onset date." Next, the ALJ determined that Gann had severe impairments including "obesity, major depressive disorder, status post lumbar fusion, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, migraine headaches, bilateral knee osteoarthritis, bilateral chondromalacia, asthma, pulmonary nodule, and restless leg syndrome." The ALJ then determined that none of Gann's impairments meet "or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."

Steps four and five require the ALJ to determine whether Gann can perform "past relevant work," and if not, whether Gann can perform "any other work." To make these determinations, the ALJ must determine Gann's residual functional capacity (RFC). Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) ("Step four requires the ALJ to consider whether the claimant retains the RFC to perform her past relevant work."). "'Residual functional capacity' (RFC) is defined as 'what [the claimant] can still do' despite his or her 'physical or mental limitations.'" Lauer, 245 F.3d at 703 (alteration in original) (citing 20 C.F.R. § 404.1545(a)). "The ALJ bears the primary responsibility for determining a claimant's RFC . . . ." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). "The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating

---

[2]The steps are: (1) Is the claimant currently performing substantial gainful activity (SGA)? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix I? (4) Does the impairment prevent the claimant from performing past relevant work? (5) Does the impairment prevent the claimant from doing any other work?

physicians and others, and [the] claimant's own descriptions of [her] limitations." Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003).

Here, the ALJ determined Gann's RFC to be as follows:

[Gann can] lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk up to two hours and sit up to six hours. She will need to alternate between sitting and standing at least every thirty minutes to an hour. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds and never balance . . . . She is limited to jobs that can be performed while using a handheld assistive device or a wheelchair for uneven terrain or prolonged ambulation . . . . She is limited to simple, routine, repetitive tasks with no public interaction. She can work around co-workers throughout the day, but can have only occasional interaction with her co-workers.

At step four of the sequential evaluation process, the ALJ determined that Gann could not perform her past relevant work. At step five, the ALJ determined whether Gann "ha[s] the RFC to perform other kinds of work, and [whether] jobs that [she] could perform exist in substantial numbers in the national economy." Lauer, 245 F.3d at 703.

"The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." Sultan v. Barnhart, 368 F.3d 857, 864 (8th Cir. 2004). But, we have held that "[t]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir. 2004). "Unless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant." Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994).

Here, the ALJ posed two hypothetical questions to the vocational expert (VE) at the November 2013 hearing. The ALJ's first hypothetical question was:

> [A]ssume an individual of the claimant's age, education, work experience, who can occasionally lift 20 pounds, frequently lift 10 pounds. The individual can stand or walk for up to two hours and sit for up to six hours. The individual can occasional [sic] climb ramps or stairs, never climb ladders, ropes or scaffolds, never balance, occasionally stoop, never kneel, crouch or crawl. . . . The individual can frequently rotate, flex or extend the neck. The neck would be limited to jobs that can be performed while using a hand-held assistive device or a wheelchair for uneven terrain or prolonged ambulation . . . . The individual would need to avoid exposure to extreme cold. The individual may be exposed to occasional wetness. The individual would need to avoid all exposure to excessive vibration, and all exposure to operational controls and moving machinery, unprotected heights and hazardous machinery. The individual would be limited to performing simple, routine and repetitive *tasks* with no public interaction . . . . And the individual can work around coworkers throughout the day, but with only occasional interaction with coworkers.

(emphasis added). The VE testified that the hypothetical person cannot perform Gann's past work, but that there is "other work in the national economy" for such a hypothetical individual. The VE gave three "sedentary examples" including "administrative support worker," "document preparer," and "final assembler, optical goods."

Next, the ALJ asked the same hypothetical question adding the restriction that the hypothetical person "would need to alternate between sitting and standing . . . between 30 minutes and an hour." In response the VE said that this change would decrease the available jobs by fifteen percent (i.e., 85% of those three sedentary jobs would still be available).

Importantly, the ALJ failed to include anything about adaptation restrictions in the RFC assessment in the hypothetical posed to the VE, and we have previously recognized that a VE cannot accurately assess the claimant's job prospects unless the hypothetical question comprehensively describes the claimant's limitations. Smith, 31 F.3d at 717.

Here, two medical professionals, Drs. Rafael Smith and C. William Breckenridge, Psy.D., opined that Gann's ability to adapt to a work environment was compromised because of the combination of her mental and physical impairments. The ALJ found Breckenridge and Smith to be credible giving "significant weight" to both of their opinions. Breckenridge stated that "[Gann's] ability to adapt to a work environment appears to be *highly marginal*." (emphasis added). Smith similarly noted that Gann had (1) "adaptive limitations," (2) "moderately limited" "ability to respond appropriately to changes in the work setting," and (3) cannot work in a setting that "require[s] frequent or intense . . . change in routine." Neither the RFC assessment nor the ALJ's hypothetical posed to the VE included these adaptive limitations described by sources to whom the ALJ gave "significant weight."

Because the hypothetical posed to the VE did not contain all of Gann's limitations and impairments, the VE's testimony cannot be viewed as substantial evidence that Gann is able to perform other work in the national economy.

### III. Conclusion

We find that the ALJ's RFC assessment and hypothetical question to the VE did not contain all impairments supported by substantial evidence in the record, which means that the VE's testimony is not substantial evidence. Finding the record as a whole lacking substantial evidence to support the ALJ's decision, we vacate the judgment of the district court and remand to the Commissioner for further consideration consistent with this opinion.

_____